# ANNEXES TO THE "MOTION TO ADMIT COMMENT" AND "A COMMENT TO OPPOSITION TO THE MOTION TO DISMISS"

PHILIPPINE POSTAL CORPORATION GENERAL ACCOUNTING DIVISION
RECEIVED
AUG 21 2007
BY:

*Republic of the Philippines*
**PHILIPPINE POSTAL CORPORATION**
Liwasang Bonifacio, Manila

iac/rrj/08/15/07

| Payee/Office: PERFECTO C. VELASCO | TIN/Employee No: | |
|---|---|---|
| Address: 954-A Bayan Luma 9 Imus, Cavite | Title | Code: |
| **Particulars** | **Account Code** | **Amount** |
| To payment of indemnity for the lost Registered Letter no. LF-1089 sent by the claimant to HON. Colien Koilar -Kotelli of United District Judge, United States Federal District Court, District of Columbia , Washington DC, USA on April 21, 2006.<br>30.00 X P81.2099 P2,436.30<br><br>Note: USA Responsibility<br>Ref. No. DE268900<br><br>121-02- 2,436.30<br>401-01 2,436.30<br><br>**ROWENA L. ABAD**<br>Acting Chief<br>International Accounts Division | OFFICE OF THE POSTMASTER GENERAL RECEIVED 4501 21 AUG 2007 PHILIPPINE POSTAL CORPORATION | P2,436.30 |
| Amount Due | | **P2,436.30** |

## BUDGET UTILIZATION SLIP

No.:
Date:

| A Requested by: | B Funds Available |
|---|---|
| **Certified:** Charges to budget necessary, lawful and under my direct supervision | **Certified:** Budget available and funds earmarked/obligated for the purpose as indicated above. |
| Signature: | Signature: |
| Printed Name: **ELIZABETH C. TUNGOL** | Printed Name: |
| Position: APMG for Finance | Position |
| Date: | Date: |

## DISBURSEMENT VOUCHER

No.: 08-07-2437
Date: AUG 21 2007

| A Certified: | B Approved for Payment |
|---|---|
| ☐ Supporting documents complete and proper<br>☐ Cash available<br>☐ Subject to ADA (Where applicable) | Two thousand four hundred thirty six pesos & 30/100<br>2,436.30 |
| Signature: | Signature: |
| Printed Name: **GLORIA C. MIRANDA** | Printed Name: **HECTOR R.R. VILLANUEVA** |
| Position: Chief Accountant, Accounting Division | Position: Postmaster General and CEO |
| Date: | Date: |

| C Received payment | | D Journal Entry Voucher |
|---|---|---|
| Signature: Date: 22 Aug 2007 | Check/ADA NO.: 282672<br>Date: AUG 22 2007 | No.: |
| Printed Name: PERFECTO C. VELASCO | Bank Name:<br>OR No./other relevant | Date: |

"ANNEX A"

PHILIPPINE POSTAL CORPORATION
Liwasang Bonifacio, 1000 Manila, Philippines

PHILPOST

INTERNATIONAL ACCOUNTS DIVISION

iac/rrj/07

July 11, 2007

PERFECTOR C. VELASCO / PERFECTO C. VELASCO
954-A Bayan Luma 9
Imus, Cavite

Sir/Madam:

This is to inform you of your right to claim payment of indemnity for your lost Registered Letter No. LF-1088 addressed to Atty. Kathleen Konopka of Assistant United States Attorney 555 Fourth St.., N.W. Washington D.C. 20530 U.SA. on April 21, 2006.

If you are interested to claim payment, contact us soonest through our number (527-54-09), or write us:

The Acting Chief
International Accounts Division
Office of the Assistant Postmaster General for Finance
5th Floor, Philippine Postal Corporation
Liwasang Bonifacio
1000 Manila

Very truly yours,

ROWENA L. ABAD
Acting Chief

"ANNEX A"



REPUBLIC OF THE PHILIPPINES

Senate

Pasay City

*Hon. Manuel "Lito" M. Lapid*

SENATOR

November 28, 2006

**Hon. Judge Colleen Kollar-Kotelly**
United States District Court
District of Columbia

**Dear Judge Kollar-Kotelly:**

This pertains to the request for assistance of Perfecto C. Velasco, a constituent, regarding **Civil Action No. 06-0174 (CKK), entitled Perfecto C. Velasco v. United States of America**, which is assigned to your court.

It appears that the defendant United States of America filed a Motion to Dismiss the complaint and the Court advised plaintiff Velasco to respond to the said motion. As plaintiff Velasco has no lawyer representing him, he had to research the case himself and so he filed with the Court a letter asking for an extension of time within which to file his opposition to the motion to dismiss (Annex "A"). Up to the present, plaintiff Velasco has yet to receive an order from the Court regarding his request for extension.

Be that as it may, plaintiff Velasco would like to assure the Court that he has no intention of abandoning his claim. In fact, plaintiff Velasco has been very busy doing research work on his own and, despite the absence of resources and adequate skills, was able to prepare an Opposition to the motion to dismiss (Annex "B"). We appeal in the interest of justice and fair play that the attached opposition to the motion to dismiss be admitted and considered in the resolution of the said motion.

Thank you and hoping for your favorable action on this request.

Sincerely yours,

**MANUEL "Lito" M. LAPID**

Rm. 516, 5th Floor, Senate of the Philippines, GSIS Building, Financial Center, Roxas Boulevard, Pasay City
Office Phone Nos. 552-6601 to 80 (Trunk Line) local 5573, 5575 Fax No. 552-6695

"ANNEX A-1"

ANNEX B

I HISTORY OF THE CASE

17 FEBRUARY 1976 - CHARGED with Violation of UCMJ Article 80: Attempt to Escape from Lawful Custody; (Part of the Plea Bargain was that this case would be dropped)

Violation of UCMJ Article 121: Larceny of Government Property {$1,405.00}

17 February 1976 - 10 APRIL 1976 - Pre-Trial CONFINEMENT

10 APRIL 1976 - SPECIAL COURT-MARTIAL

Sentence Adjudged:

Bad Conduct Discharge; Confinement at HARD LABOR for 4 (Four) Months; Forfeiture of $100.00 per month for 6 (Six) months; REDUCTION to PAY-GRADE E-1

10 MAY 1976 - CONVENING AUTHORITY APPROVED SENTENCE

09 JUNE 1976 - SUPERVISORY AUTHORITY APPROVED SENTENCE

10 JUNE 1976 - REQUESTED RESTORATION, REQUESTED CLEMENCY

20 JULY 1976 - Released from Confinement and Restored to Full Duty while Awaiting Appellate Review

05 August 1976 - NAVAL CLEMENCY AND PAROLE BOARD

No Clemency granted. Request for Restoration denied.

27 SEPTEMBER 1976 - NAVY COURT of Military Review

Affirmed Findings and Sentence

10 JANUARY 1977 - NAVY COURT of Military APPEALS

Petition Denied

28 FEBRUARY 1977 - SSPCMO # 6-77 orders: Article 71c, UCMJ, having been complied with, BAD CONDUCT DISCHARGE ordered executed.

"ANNEX B"



Republic of the Philippines
PHILIPPINE POSTAL CORPORATION
Postal Region 4
Imus, Cavite

OFFICE OF THE POSTMASTER

29 August 2007

The Director
Central Mail Exchange Center
Pasay City

Sir:

Please verify as to the status of Foreign Reglette r NO.R90120744 addressed to Hon. Arnold Russo of Appeals Management Center, Board of Veterans Appeals, Washington, D.C. 20420 forwarded to your office under:

Imus/ CMEC Fgn.Reg.

| | |
|---|---|
| Date | : April 02,2007 |
| Bill | : 64 |
| Page | : 01 |
| Col. | : 01 |
| Line | : 06 |

Sender Mr. Perfecto C. Velasco of #954-A Bayan Luma 9, Imus, Cavite is complaining subject mail matter was not received by addressee as of date.

Please verify and advice this office as soon as possible.

Thank you.

Very truly yours,

MANUEL R. AZAÑA
Postmaster

"ANNEX A2"

DE 073206500 PH
Posted on 29 AUG 2007 20
Preserve this receipt for reference in case of inquiry

Postmaster/Teller

II * [Pls. Note: The U.S. Dept. of Veterans Affairs, Manila ADVISED Me they could Adjudicate a [illegible] SPECIAL CHARACTER OF SERVICE REVIEW REGARDING THE BAD CONDUCT DISCHARGE "and SPCM

10 MARCH 1977 - DISCHARGE - Bad Conduct Discharge Special Court Martial, auth: Bureau of Naval Personnel Manual, Article 3850190

JUNE 1978 - Applied at the U.S. DEPARTMENT of VETERANS AFFAIRS, Regional Office, Manila, PHILIPPINES, Educational Benefits, Vietnam-Era GI Bill of Rights; Requested for Medical Assistance for Nervous Breakdown; Sinusitis; and Ulcer (Stomach) (With MISS LONTOC and Mr. JAY CARIÑO). Denied Benefits.

* See NOTE at FIRST PARAGRAPH

1981 - NAVY DISCHARGE Review BOARD Application Denied

1982 - NAVY DISCHARGE Review BOARD Re-Application Denied

26 APRIL 1983 - U.S. Navy Receiving Station, U.S. Naval Station, Subic Bay, R.P.; Applied for Reinstatement back to Service. Reinstatement Denied.

25 OCTOBER 1985 - NAVY DISCHARGE REVIEW BOARD Re-Application Denied.

29 NOVEMBER 1988 - U.S. Department of Veterans Affairs RO Manila, P.I. Application for Service-Connected Disability Compensation Benefits. Benefits Denied.

18 AUGUST 1989 - Department of Veterans Affairs, Manila Personal Appearance Hearing

Please NOTE: In This Particular Hearing, I formally brought out for the First Time the ISSUE of the 4th Amendment VIOLATION of Constitutional Rights; Unlawful Apprehension; Illegal Detention; Illegal Search and Seizure; and Incompetence Counsel

18 AUGUST 1989- Department of Veterans Affairs, Manila
I honestly believe, I was Appealing the said VIOLATIONS of HUMAN RIGHTS ISSUE at the PROPER HEARING VENUE.

JANUARY 1990 - U.S. Embassy, Manila, PHILIPPINES
Appointment with Lt. COL. DAVID P. STEPHENSON, LEGAL ATTACHE - Requested for further Assistance to appeal the 4th Amendment VIOLATIONS:
Lt. Col. STEPHENSON arranged and even suggested to Lt. Thomas SAVINO; CAPT. ROBERT ROSSI to talk to Washington about the VIOLATIONS of HUMAN RIGHTS committed by the U.S. Navy.

MARCH 1990 - NAVY LEGAL SERVICE OFFICE, U.S. NAVAL STATION, SUBIC BAY, R.P.
Appointment with COMMANDING Officer, SUBIC BAY; CAPTAIN ROBERT ROSSI and Legal Officer Lt. THomas SAVINO to Appeal the VIOLATIONS.

JUNE-JULY 1990 - U.S. Naval Station, Subic Bay, R.P. SERIES of Appointment with a Navy Lawyer, Lt. COMMANDER LUIS NIEVES GONZALES, sought further assistance to appeal. He suggested and I FILED for the Very first time a Claim for Damages with the U.S. Navy Claims Commission, Subic Bay amounting to US $ 30,000,000.00

1991 - NEGOTIATIONS with:
1.) Lt. COL. DAVID P. STEPHENSON, Legal and Military Attache, U.S. Embassy, Phil.
2.) CAPT. ROBERT ROSSI - Commander, SUBIC Bay
3.) Lt. Commander LUIS N. GONZALES, JAG, Subic.
4.) Lt. THomas SAVINO - Legal officer Subic.

1993 - Legal Counsel Atty. FIDELA VARGAS Flew to U.S. to Attend to my Case.

1996-97 - Reopened Case at Department of Veterans Affairs, Manila.

27 AUGUST 1998 - Department of Veterans Affairs, Personal Appearance Hearing: "COERCION Issue"

OCTOBER 1998
24 MARCH 1998 - UNITED STATES INFORMATION SERVICE, THOMAS JEFEERSON LIBRARY
I researched further for U.S. Laws and Military Law. up to OCTOBER, 1998

From 1998 to 1999 - U.S. Naval Military Personnel Command, Wash. D.C.
For more or less 5 (FIVE) times, I requested for the Transcript of the Special Court-Martial Investigative Reports, but the U.S Navy sent no records to the Present time.

22 August 2002 - Department of Veterans Affairs REOPENED CLAIM

25 February 2003 - Veterans Affairs Hearing

06 March 2003 - Washington, D.C.

14 January 2004 - Personal Hearing

31 JAN 2006 — Claim for $ 63,000,000 — Damages for Over-Incarceration at the U.S. DISTRICT COURT, DISTRICT OF COLUMBIA

31 JAN. 2007 - CLAIM for DISABILITY Compensation to the BOARD of VETERANS APPEALS was "REMANDED".

military records to correct error or remove injustice, so that marine had exhausted review before Board. Kaiser v. Secretary of the Navy, D.C.Colo.1982, 542 F.Supp. 1263.

Servicemember challenging an Army decision to discharge him on the basis of his homosexuality was not required to exhaust his administrative remedies before the Army Board for Correction of Military Records, since an administrative record adequate for judicial review already existed, since there were few, if any, persons situated similarly to plaintiff, so that the Army's ability to perform its military function would not in any way be impaired by not requiring exhaustion, and since the question whether plaintiff's discharge was permissible was exclusively a question of law. Watkins v. U.S. Army, D.C.Wash.1982, 541 F.Supp. 249.

Serviceman faced with discharge for failure to satisfactorily participate in alcohol rehabilitation program was required, before seeking injunction, to first present his claim to the Army Board for the Correction of Military Records. Simmons v. Brown, D.C.Md.1980, 497 F.Supp. 173.

Federal courts do not normally entertain petitions for writs of habeas corpus brought by persons in military custody unless all available military appeals have been exhausted, but where the habeas petitioner is a civilian who challenges the jurisdiction of military authorities to exercise control over him or to try him in the military courts, exhaustion is not required. Barkley v. Warner, D.C.Mich. 1976, 409 F.Supp. 1303.

Army officer who had voluntarily enlisted and who subsequently submitted request for separation on grounds of conscientious objection was not required to apply to Army Board for Correction of Military Records before seeking relief in civilian courts by way of habeas corpus. Packard v. Rollins, D.C.Mo. 1969, 307 F.Supp. 1388, affirmed 422 F.2d 525.

Doctrine of exhaustion of administrative remedies does not require application to Army Board for Correction of Military Records by medical reservist claiming conscientious objection before institution of petition for habeas corpus. Nason v. Secretary of Army, D.C.Mass.1969, 304 F.Supp. 422.

Army private seeking discharge as conscientious objector was not required to go before Board for Correction of Army Records before seeking habeas corpus; private who appealed from denial of his applications through headquarters of Department of the Army exhausted his administrative remedies but even if he had failed to exhaust remedies district court possessed jurisdiction generally since unlawful custody of person in armed forces was claimed. U.S. ex rel. Healy v. Beatty, D.C. Ga.1969, 300 F.Supp. 843, affirmed 424 F.2d 299.

### 88. Delay in resorting to remedies

Where former member of armed services claimed that he first discovered error in his military medical records in 1970 and promptly sought to have records corrected, there was no unwarranted delay in exhausting administrative remedies so as to preclude granting relief. Nolen v. Schlesinger, C.A.Ga.1974, 492 F.2d 787.

Petitioner who did not protest or appeal Army's discharge of him for over 17 years and who gave court no reasons for delay failed to exhaust administrative remedies and was not entitled to judicial review of discharge. Davis v. Secretary of the Army, C.A.Ga.1971, 440 F.2d 817.

A delay of approximately 75 years in making application to remove a record charge of desertion upon Civil War record of plaintiffs' father justified denial of the application on ground of laches, without a showing that delay was prejudicial to the government, since even the government could not be assumed, after 75 years, to have ready access to individual record in all respects of every soldier enlisted in the Civil War. Snauffer v. Stimson, 1946, 155 F.2d 861, 81 U.S.App.D.C. 110.

Where record showed that for more than 50 years plaintiffs' father never made the slightest effort to have notation of "desertion" on his Civil War record cleared up, such a period of delay would bar father's application to remove record charge of desertion upon his war record on ground of laches, and it would likewise bar claim of his descendants for such relief, since his knowledge and delay were equally chargeable against them. Id.

### 89. Deliberate bypass or waiver of remedies

As respects rule that failure to use state or military remedies unavailable at time collateral relief is sought bars any such relief only if failure was a deliberate bypassing of those remedies, test for such deliberate bypass or waiver is an awareness of availability of state or military remedy and a decision not to use it made by petitioner himself. Angle v. Laird, C.A.Kan.1970, 429 F.2d 892, certiorari denied 91 S.Ct. 900, 401 U.S. 918, 27 L.Ed. 2d 819.

### 90. Circumstances justifying judicial intervention—Generally

As exceptions to rule of strict application of exhaustion doctrine in military discharge cases, (1) only those remedies which provide genuine opportunity for adequate relief need be exhausted, (2) exhaustion is not required when petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies, (3) doctrine will not apply when administrative appeal would be futile, (4) and exhaustion may not be required, under some precedents, if plaintiff has raised substantial constitutional question. Von Hoffburg v. Alexander, C.A.Ala.1980, 615 F.2d 633.

Administrative remedies before Board for Correction of Military Records should be exhausted unless party invoking court's jurisdiction can demonstrate special circumstances. Sohm v. Fowler, 1966, 365 F.2d 915, 124 U.S.App.D.C. 382.

### 91. —— Futility of resort to remedy

Navy enlistees who were separated for engaging in homosexual activities were not required to exhaust administrative remedies by applying for reenlistment and, on rejection, seeking review before Board for Correction of Naval Records before bringing action complaining of alleged violation of their constitutional rights, as focus of the suit was on constitutionality of Navy's actions in discharging plaintiffs and not constitutionality of regulations prohibiting acceptance of enlistment applications from homosexuals and even if reenlistment practices were at issue, it was plain that any reenlistment application would be completely futile. Beller v. Middendorf, C.A. Cal.1980, 632 F.2d 788, rehearing denied 647 F.2d 80, certiorari denied 101 S.Ct. 3030, 452 U.S. 905, 69 L.Ed.2d 405, certiorari denied 102 S.Ct. 304, 454 U.S. 855, 70 L.Ed.2d 150, rehearing denied 102 S.Ct. 621, 454 U.S. 1069, 70 L.Ed.2d 605.

Claim of black National Guardsman, suing state National Guard for allegedly unlawfully discriminating against him on basis of race when it refused to hire him for civilian position, and then retaliating against him for filing discrimination complaint by its preparation of adverse officer's efficiency report, that his discharge was based on such erroneous report could not be considered until administrative remedies available through Army Board for Correction of Military Records had been exhausted, where Guardsman had not offered any reason why application to Board to have such report reviewed for substantive errors would have been futile. Thornton v. Coffey, C.A.Okl.1980, 618 F.2d 686.

In view of viable possibility that Board for Correction of Military Records might determine that discharged enlistee was not "homosexual" within meaning of Defense Department's policy directive, that reviewing board might determine that she did not possess the "homosexual tendencies" referred to in Army regulation, and that Army could quite possibly adopt construction of contested regulation which would moot constitutional question in case, futility doctrine was not applicable and military would be given full opportunity, through application of exhaustion doctrine, to exercise its own expertise and rectify its own errors. Von Hoffburg v. Alexander, C.A. Ala.1980, 615 F.2d 633.

Where woman who enlisted in Navy alleged fraud in inducement of enlistment contract, where Navy was responsible for substantial delay of five months in administrative determination of her request for discharge, and where witness' recanting of his testimony and already significant delay made it probable that any further appeal would be futile, petitioner had exhausted administrative remedies and district court had jurisdiction of her habeas corpus proceeding. Withum v. O'Connor, D.C.Puerto Rico 1981, 506 F.Supp. 1374.

### 92. —— Inadequacy of relief afforded

That monetary damages claim could not be adequately resolved administratively did not preclude application of exhaustion requirement to plaintiff's other claims; plaintiff would be required to exhaust her administrative remedies prior to seeking judicial review of honorable discharge from Army, and district court's dismissal of those claims which could be resolved through Army's internal administrative proceeding would be affirmed, but, to avoid potential bar of statute of limitations, district court would be directed to hold damages claim in abeyance pending administrative resolution of other claims. Von Hoffburg v. Alexander, C.A.Ala.1980, 615 F.2d 633.

### 93. —— Irreparable injury

Where soldier sought to obtain a discharge from his confinement within the Army, and delay attendant upon petition to the Board for Correction of Military Records would significantly increase the length of his involuntary service without judicial review and might moot the case entirely, the soldier was not required to exhaust the administrative remedies of petition to the Board before seeking judicial review of the denial of his discharge on ground that his enlistment contract had not

"ANNEX B.1"

**38. Res judicata—Generally**

United States Supreme Court's denial of codefendant's application for stay pending disposition of his petition for certiorari attacking constitutionality of state death penalty statute's (Ala. Code 1975, § 13-11-2(a); § 13A-5-31(a) (Repealed)) sentencing procedures was not a binding decision on merits of codefendant's constitutional challenges to state's sentencing procedures, and thus did not decide merits of defendant's claims before the court of appeals on that issue. Ritter v. Smith, C.A.11 (Ala.) 1984, 726 F.2d 1505, certiorari denied 105 S.Ct. 218, 469 U.S. 869, 83 L.Ed.2d 148.

Court of Appeals had no discretion to consider contention of state prisoner, who appealed from judgment dismissing petition for habeas corpus, that his sentence of death for rape amounted to cruel and unusual punishment in violation of U.S.C.A.Const. Amend. 14 which reflects substance of U.S.C.A.Const. Amend. 8, where prisoner had first posed question to United States Supreme Court which denied certiorari, and rape involved nine-year-old girl who suffered substantial injuries. Snider v. Peyton, C.A.4 (Va.) 1966, 356 F.2d 626.

**39. —— Decisions made in prior habeas petition**

Where district court order directing release of petitioner from custody, which was appealed, merely put into effect alternative proviso of former order in habeas corpus proceeding, and former order was final, latter order could not be erroneous. Edwards v. State of La., C.A.5 (La.) 1974, 496 F.2d 904.

Reconsideration of alleged denial of speedy trial as ground for habeas corpus was precluded by court's affirmance of dismissal of earlier petition for habeas corpus urging the same ground. U.S. ex rel. Gist v. Rundle, C.A.3 (Pa.) 1967, 371 F.2d 407.

Where claim of habeas corpus petitioners that they were not represented by counsel in state court proceeding at time that confessions were made was raised and determined adversely to them in prior federal habeas corpus petitions, such claims would not receive further consideration by Court of Appeals. Latham v. Crouse, C.A.10 (Kan.) 1965, 347 F.2d 359.

Where findings that defendant was not denied compulsory process for obtaining witnesses in his favor and was not denied the assistance of counsel for his defense were amply supported by the evidence and there were similar adjudications in prior habeas corpus proceedings, findings would not be disturbed on appeal. Bell v. Johnston, Warden, C.C.A.Cal.1945, 152 F.2d 59.

**40. Judicial notice**

Court of Appeals in considering habeas corpus appeal of state prisoner took judicial notice of prior habeas corpus proceedings brought by same petitioner in connection with the same conviction including state petitions even when prior state case was not made a part of record on appeal; Court of Appeals could draw upon records in all preceding cases. Moore v. Estelle, C.A.5 (Tex.) 1976, 526 F.2d 690, certiorari denied 96 S.Ct. 3180, 426 U.S. 953, 49 L.Ed.2d 1192.

Court of Appeals would take judicial notice that White County, Georgia, is rural county where criminal indictments are frequently returned and trials had during fixed sessions of court, where information concerning witnesses and events is more generally known than in large cities, and where the necessary preparation for trial can often be accomplished during court week. Roberts v. Dutton, C.A.5 (Ga.) 1966, 368 F.2d 465.

Court of Appeals, on appeal from denial of federal habeas corpus relief, could take judicial notice of prior state petition filed by petitioner. Murray v. State of La., C.A.5 (La.) 1965, 347 F.2d 825.

On appeal from denial of writ of habeas corpus, the Court of Appeals would take judicial notice of prior habeas corpus proceedings by the same applicant in the same court. Egan v. Teets, C.A.Cal.1957, 251 F.2d 571.

On appeal from order of Federal District Court for Northern District of California denying petition for writ of habeas corpus, Court of Appeals for the Ninth Circuit would take judicial notice of official records of case in Federal District Court for Western District of Washington, Southern Division, which set forth indictment, conviction and sentence for escape from federal penitentiary and assault committed on same date, for which crimes petitioner was presently confined

Ahl...

Late Appeals
807

in federal penitentiary. Lopez v. Swope, C.A.Cal.1953, 205 F.2d 8.

Circuit Court of Appeals on appeal in habeas corpus proceeding would take judicial notice of fact that no state of public hysteria against crime existed in Chicago between July and October, 1933, which would deprive one accused of murder of due process of law. U.S. ex rel. Bongiorno v. Ragen, C.C.A.Ill.1945, 146 F.2d 349, certiorari denied 65 S.Ct. 1194, 325 U.S. 865, 89 L.Ed. 1985.

The Circuit Court of Appeals on appeal in habeas corpus proceeding would take judicial notice that Hawaiian Islands, in common with whole Pacific area of the United States, have continued in a state of gravest emergency from December 7, 1941, at which time the Hawaiian Islands were attacked by Japan, and that the imminent threat of a resumption of the invasion persisted until February 19, 1942, at which time petitioner applied for a writ of habeas corpus. Ex parte Zimmerman, C.C.A.Hawaii 1942, 132 F.2d 442, certiorari denied 63 S.Ct. 1027, 319 U.S. 744, 87 L.Ed. 1700.

**41. Presumptions**

Federal appellate courts presume that state courts do not commit error and that defendants appearing before state courts in criminal prosecutions are not deprived of their constitutional rights. Herrera v. Wilson, C.A.9 (Cal.) 1966, 364 F.2d 798, certiorari denied 87 S.Ct. 527, 385 U.S. 980, 17 L.Ed.2d 442.

Though record was silent as to whether bill of information was read to state prisoner at her arraignment as required by LSA-R.S. 15254, Court of Appeals, on appeal from order of federal District Court denying application for writ of habeas corpus, was required to give weight to presumption that proceedings were regular and conformed to statutory requirements, especially in light of state prisoner's failure to offer any evidence to contrary. Williams v. Babineaux, C.A.5 (La.) 1966, 357 F.2d 481.

Court of Appeals in hearing appeal from order releasing Michigan prisoner from custody assumed that Michigan Supreme Court which denied prisoner's application for leave to appeal did its duty and considered all of questions raised by prisoner in application to extent of determining that they were not meritorious. Buder v. Bell, C.A.6 (Mich.) 1962, 306 F.2d 71.

In habeas corpus proceeding, where charges by petitioner of bad faith and false pretenses were denied, petitioner had burden of proving such allegations, and where upon hearing he made no attempt to do so, Court of Appeals was required to assume that no bad faith existed. U.S. ex rel. Hamby v. Ragen, C.A.Ill.1949, 178 F.2d 379, certiorari denied 70 S.Ct. 515, 339 U.S. 905, 94 L.Ed. 1334.

**42. Time of appeal—Generally**

Ordinarily, failure to timely file notice of appeal of denial of habeas corpus relief forecloses the right to appeal and results in the Court of Appeals having no jurisdiction to entertain the appeal. Holley v. Capps, C.A.5 (Ala.) 1972, 468 F.2d 1366, supplemented 475 F.2d 232.

Court of Appeals does not have discretion to accept jurisdiction to entertain appeal in habeas corpus proceeding in absence of timely notice of appeal. Stewart v. Bishop, C.A.8 (Ark.) 1968, 403 F.2d 674.

Failure of habeas corpus petitioner to file with clerk of district court a notice of appeal within 30 days from denial of writ may result in denial of right to appeal. Meade v. Cox, D.C.Va.1970, 310 F.Supp. 233, affirmed 438 F.2d 323, certiorari denied 92 S.Ct. 234, 404 U.S. 910, 30 L.Ed.2d 182.

**43. —— Late appeals**

Fact that state prisoner failed to seasonably appeal original adverse ruling of district court in habeas corpus case did not preclude granting an evidentiary hearing to petitioner who had acted as his own counsel from the outset. Anderson v. Page, C.A.10 (Okl.) 1972, 454 F.2d 432.

Where substantial question was involved in appeal from order denying writ of habeas corpus and it appeared that petitioner had not been guilty of personal neglect with respect to failure of his counsel to comply with procedural requirements for filing the record, petitioner's liberty being at stake, Court of Appeals would exercise its discretion to consider and determine appeal, even though petitioner's attorney had failed to file record and statement of points of law within

MEDICAL RECORD | PROGRESS NOTES

| DATE | |
|---|---|
| 3-9-98 | Wt: 67.5 kg Ht: 158 cm BP: 138/94 R: 20 P: 80 T = 37.7 |
| 9:45 pm | A case of 48 y.o. male, ambulatory came in for the 1st time for OPC Treatment; re: nightmares: no meds taken |
| | no known allergy: |
| | Patient came in anxious looking; claims to have many problems medically but more worried about his nightmares. Explained to him about SC's + NSC's but insisted he has but with the "US court at the moment" |
| | referred to M.D — [signature] |
| 3-9-98 | S: The Veteran is presently 43 yrs, when he was on his 3rd yr of serving the U.S. Navy, he was caught in possession of an [illegible] part which led to his [illegible] for 6 months and later was convicted for larceny and dishonorably discharged from the U.S. Navy. He since then has been taking the case to the Court and contesting the results of his conviction. He complained that he felt Traumatized and is always depressed, kept awake at night and presently always pre-occupied with "The Trauma of being court martialled and humiliated" |
| 10:25 | |

(Continue on reverse side)

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; rank; rate; hospital or medical facility)

Velasco, Perfecto C.
SS# 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
VAOPC Manila

REGISTER NO. | WARD NO.

PROGRESS NOTES
STANDARD FORM 509 (Rev. 11-77)
Prescribed by GSA/ICMR,
FIRMR(41CFR)201-45.505
509-111

"ANNEX B B-2"

**PROGRESS NOTES**

| DATE | |
|---|---|
| 3-9-98 | He also claims that he has [redacted] a gamut of somatic complaints ranging from joint |
| 1025 | pain to non-specific discomfort |
| | MSE - fairly dressed, interacted in clear and smooth fashion, He talked incessantly, mood euthymic, affect appropriate, has allegations of nightmares and flashbacks, which were not clearly substantiated by his actual account and details were quite circumstantial to his statements, No morbid ideations were elicited, He was oriented to 3 spheres, memory was intact, judgement fair, He has insight. |
| | HEENT - pink conj, anicteric sclerae |
| | Resp - Clear Breath sounds, no rales |
| | CVS - no murmurs, no ectopic beat |
| | GIT - no organomegaly, no tenderness |
| | Ext - (-) [illegible], (-) [illegible] |
| | Dx: R/O Dysthymia |
| | Rec: - Advise Veteran to consult his Private M.D. (Psychiatrist) for a more thorough evaluation and continuous Treatment. |
| | - No medications prescribed |
| | - No future schedule since this is a one time consultation |

ALFREDO E. DELA FUENTE, M.D.
STAFF PHYSICIAN

FERES DOCTRINE et seq. of this Title

denied 104 S.Ct. 2354, 466 U.S. 975, 80 L.Ed.2d 826.

The *Feres* doctrine of immunity from suits brought by servicemen did not bar suit under subsec. (b) of this section and section 2671 et seq. of this title, brought against the United States seeking damages for alleged negligent and wrongful acts that resulted in plaintiff's involuntary activation into the military and his imprisonment for refusing to submit to military authority where although at one time plaintiff had been in the military his discharge completely ended his military commitment and instant actions occurred after that discharge. Valn v. U.S., C.A.3 (Del.)1983, 708 F.2d 116.

A serviceman is precluded from maintaining an action for damages under section 2671 et seq. of this title for injuries sustained while on active duty; however, if the serviceman sustains an injury after having been discharged, he may bring an action under chapter 171 of this title. Wisniewski v. U.S., D.C.Wis.1976, 416 F.Supp. 599.

835. —— Expired enlistment

Alleged injury to marine, who had been detained in Marine Corps for two months between expiration of his enlistment and his formal discharge, arose out of activity incident to his military service; thus, his suit under Federal Tort Claims Act was barred by *Feres* doctrine. Garrett v. U.S., C.A.5 (La.) 1980, 625 F.2d 712, certiorari denied 101 S.Ct. 1363, 450 U.S. 918, 67 L.Ed.2d 344.

836. —— Off duty

*Feres* doctrine barred medical malpractice claim by widow and surviving child of service member who committed suicide after being seen at naval hospital emergency room; although he was off duty, service member enjoyed use of hospital solely by virtue of his status as service member and doctors who treated him were subject to military orders. Persons v. U.S., C.A.9 (Cal.) 1991, 925 F.2d 292.

*Feres* doctrine barred suit by off-duty military police officer who was run over by an on-duty military police officer at an on-base picnic site where nonmilitary personnel were present. Millang v. U.S., C.A.9 (Cal.) 1987, 817 F.2d 533, certiorari denied 108 S.Ct. 1290, 485 U.S. 987, 99 L.Ed.2d 500.

*Feres* doctrine barred action under Tort Claims Act alleging that army, through its employee, continued to serve drinks to driver when he was obviously drunk, which resulted in service member's death in automobile accident, even though injury occurred off premises while service member was off duty, where service member was only entitled to be in club at which drinks were served because he had appropriate rank, was member of army, and was on active-duty status. Bozeman v. U.S., C.A.2 (N.Y.) 1985, 780 F.2d 198.

*Feres* doctrine, precluding Federal Tort Claims Act suits for injury to member of Armed Forces whose activity at time of injury is "incident to military service," was applicable to bar suit by air force sergeant for injuries received in collision with air force bus driven by air force employee when sergeant was driving his civilian automobile home from personal errand to grocery store during his off-duty hours, considering that sergeant was on active duty even though off duty for the day, that collision occurred on a road which was on military reservation property, and fact that sergeant's activity at time of accident, although personal, arose out of his life on military reservation. Flowers v. U.S., C.A.11 (Fla.) 1985, 764 F.2d 759.

Injuries suffered on military base by serviceman on private business during normal duty hours but during period when he had been given permission to take the day off was incident to his military service, and therefore he was afforded no remedy under subsec. (b) of this section and section 2671 of this title. Warner v. U. S., C.A.5 (Tex.) 1983, 720 F.2d 837.

Fact that serviceman was off duty for the day and working at a private job as bartender at the Noncommissioned Officers Club prior to time of accident was sufficient to eliminate any relevant link between his activities which led to the accident and his military service and his recovery under subsec. (b) of this section and section 2671 et seq. of this title was thus not barred by the *Feres* doctrine. Johnson v. U.S., C.A.9 (Mont.) 1983, 704 F.2d 1431.

Where serviceman whose death allegedly occurred when an aluminum ladder which he was using in his work after normal duty hours for a construction company came in contact with an uninsulated electric wire owned and controlled by the Department of the Army, was killed while he was not on leave, pass or furlough, where injury occurred on base, and although the work he was doing was not under immediate supervision of his military supervisors, serviceman remained at all times subject to immediate recall for immediate duty, recovery under subsec. (b) of this section and section 2671 et seq. of this title for wrongful death of serviceman was barred by the *Feres* doctrine. Miller v. U.S., C.A.8 (Mo.)1980, 643 F.2d 481.

An off-duty serviceman on a four-day furlough driving a civilian vehicle towards his home off the military reservation was not acting "incident to service" when he was involved in collision with vehicle operated by another serviceman, and therefore government would be liable like any "private person" and survivors were not barred from bringing action under subsec. (b) of this section and section 2671 et seq. of this title. Parker v. U.S., C.A.5 (Tex.) 1980, 611 F.2d 1007, rehearing denied 615 F.2d 919.

Claim arising from shooting death of off-duty army private by another off-duty private was barred by the *Feres* doctrine where claim was that the United States had been negligent in failing to exercise proper supervision and control over the private who did the shooting in that he had been convicted of previous homicide while in the Army in Germany and that therefore the Army should have known of his dangerous propensities and should have taken steps to prevent him from harming others. Shearer v. U.S., D.C.Pa. 1982, 576 F.Supp. 672.

Even assuming being "off duty" was equivalent to being "on pass," Government was not liable under subsec. (b) of this section and section 2671 et seq. of this title for death of "off-duty" serviceman, who has fatally injured in collision between his motorcycle and army bus driven by Government's civilian employee, where the accident occurred on serviceman's military base after he had left army softball team practice, which he would not have attended but for his military service, and while he traveled military road, subject at all times to control of his superiors. Watkins v. U.S., D.C.Ga.1977, 462 F.Supp. 980, affirmed 587 F.2d 279.

Where navy officer was in an off-duty status from his command, on liberty but not on leave, when he was injured while working as a part-time employee of a nonappropriated fund activity situated on naval station and where the nonappropriated instrumentality was owned and operated by the United States at the naval station for the purpose of maintaining well-being, morale and efficiency of enlisted personnel and all operative funds were either military appropriations by Congress or nonappropriated funds generated by military recreational activities, navy officer sustained his injuries in the course of activities "incident to service" and could not recover from the government under subsec. (b) of this section and section 2671 et seq. of this title. Mariano v. U.S., D.C.Va.1977, 444 F.Supp. 316, affirmed 605 F.2d 721.

837. —— On duty

On-duty serviceman who is injured due to negligence of officials or employees of the United States may not recover against the United States under Federal Tort Claims Act. Monarch Ins. Co. of Ohio v. U.S., D.C.Va.1981, 511 F.Supp. 201.

838. —— Leave or liberty

Air Force captain, on terminal leave anticipating his military retirement one month later when he was admitted to army medical center for treatment of injuries sustained in motorcycle accident and placed on medical hold status upon his admission with his retirement delayed, was barred under *Feres* doctrine from suing United States for alleged medical malpractice during his hospitalization; captain occupied status as hospitalized military service member, and military medical treatment was incident to military service and not subject to suit under Federal Tort Claims Act. Madsen v. U.S. ex rel. U.S. Army, Corps of Engineers, C.A.10 (N.M.) 1987, 841 F.2d 1011.

*Feres* doctrine, which provides that government is not liable under Federal Tort Claims Act for injuries to servicemen arising out of and incident to military duty, precluded any recovery by plaintiff who claimed that navy physicians performed surgery on him without assistance of a civilian doctor after he insisted on and was assured of a civilian doctor's supervision, despite plaintiff's argument that his injuries did not arise out of acti-

"ANNEX B-3"

ANNEX B3

U.S., D.Puerto Rico 1991, 778 F.Supp. 585.

Negligence, if any, of air traffic controller did not proximately cause aircraft to crash where reduction in aircraft's speed to point at which it would stall was not natural, continuous and foreseeable result of failure to assure minimum separation between planes at airport and, therefore, Government was not liable under Tort Claims Act. In re Air Crash Disaster at Metropolitan Airport, Detroit, Mich. on January 19, 1979, D.C.Mich.1984, 619 F.Supp. 13, affirmed 782 F.2d 1041, 1042.

Air traffic controller reasonably should have provided more assistance to noninstrument rated pilot who was in trouble due to weather conditions, and such failure was a proximate cause of the injuries and damages stemming from crash of aircraft, thus rendering the government liable, in suit under subsec. (b) of this section and section 2671 et seq. of this title, under a comparative negligence theory. Dyer v. U.S., D.C.Mich.1982, 551 F.Supp. 1266.

In action brought against United States under subsec. (b) of this section and section 2671 et seq. of this title by insurer of aircraft which crashed allegedly due to negligence of air traffic controllers, negligence of pilot in leaving his altitude of 5000 feet and descending was a superseding cause of the crash, even assuming negligence of air traffic controllers, and relieved United States of any liability under Tennessee law. Insurance Co. of North America v. U.S., D.C.Ark.1981, 527 F.Supp. 962.

For purposes of determining air traffic controller's negligence, the controller has right to rely upon assumption that pilot knows and will abide by all applicable federal aviation regulations, and he is not required to foresee or anticipate unlawful, negligent or grossly negligent acts of pilots. Colorado Flying Academy, Inc. v. U.S., D.C.Colo.1981, 506 F.Supp. 1221, affirmed 724 F.2d 871, certiorari denied 106 S.Ct. 2915, 476 U.S. 1182, 91 L.Ed.2d 544.

No negligence of airplane pilot may be imputed to passenger for whose death recovery is sought; however, if pilot's negligence was sole proximate cause of crash, federal Government cannot be held liable even though air traffic controller, its agent, was in fact negligent. Roland v. U.S., D.C.Ind.1978, 463 F.Supp. 852.

Where Federal Aviation Agency flight controllers, pilot of plane who entered airport traffic pattern unannounced and student pilot and flight instructor who operated plane with which unannounced plane collided in midair were all negligent and negligence of each was a proximate cause of collision, proportion of fault attributable to each, for purpose of California comparative negligence law, was: United States Government, 20 percent; unannounced pilot, 45 percent; student pilot, 10 percent; flight instructor, 25 percent. Rudelson v. U.S., D.C.Cal.1977, 431 F.Supp. 1101, supplemented on other grounds 444 F.Supp. 1352, 1354, 1356, affirmed 602 F.2d 1326.

Failure of pilot of aircraft in which decedents were riding prior to fatal collision to visually observe at decision height whether aircraft was in position to make a normal approach or landing and to visually see threshold of runway or approach lights constituted a violation of applicable regulations and, as such, was negligence and a proximate cause of crash as opposed to alleged negligence of air traffic controllers of Federal Aviation Administration in respect to affording a landing clearance. In re Air Crash Disaster at New Orleans (Moisant Field), La., on March 20, 1969, D.C.Tenn.1975, 422 F.Supp. 1166, affirmed 544 F.2d 270.

Pilot was not contributorily negligent upon mere ground that pilot has sole responsibility for plane and flight and that plane crashed. DeWeese v. U.S., D.C.Colo.1974, 419 F.Supp. 147, affirmed 576 F.2d 802.

Reasonable probability, not mere possibility, that deaths of flight crew of aircraft were proximately caused by negligence of air traffic controllers was essential element for recovery by estates of crew members in action against Government under subsec. (b) of this section. Baker v. U.S., D.C.Wash.1975, 417 F.Supp. 471.

Evidence in action against United States arising out of crash of airplane allegedly due to negligence of air traffic controllers did not establish that pilot was contributorily negligent and did not establish that controllers' negligence in giving incorrect recommended altitude reading was cause of crash. Zoppi v. U.S., D.C.Ohio 1975, 396 F.Supp. 41[illegible]

Federal Tort Claims Act

Act of plaintiffs' decedent in either recklessly commencing his descent in aircraft prior to fatal crash with little or no visibility in known mountainous terrain or, through a lack of preflight preparation, blindly descending in unfamiliar surroundings without any communication of his predicament to air traffic controller constituted contributory negligence which was a proximate cause of crash. Todd v. U.S., D.C.Fla.1974, 384 F.Supp. 1284, affirmed 553 F.2d 384.

Failure of air traffic controller to warn pilot of light aircraft of possibility of wake turbulence created by commercial jetliner which had landed within three minutes of light aircraft's approach was negligence and a proximate cause of crash of light plane which went out of control when it encountered the wake turbulence. Dickens v. U.S., D.C.Tex.1974, 378 F.Supp. 845, affirmed 545 F.2d 886.

Where air traffic controller did not know and had no reason to know that pilot of small aircraft, which was following large commercial aircraft on Visual Flight Rules landing approach, was flying at a dangerously low altitude and likely to encounter wake turbulence, pilot had previously landed at airport and was an experienced flyer, proximate cause of fatal crash was carelessness of the pilot himself; fact that pilot was at an altitude at which he was most likely to encounter wake turbulence was an unforeseeable fact for which air traffic controller and, hence, the United States, could not be charged with responsibility. Richardson v. U.S., D.C.Cal.1974, 372 F.Supp. 921.

Pilots of Cessna aircraft which collided in midair with a DC-9 were not contributorily negligent as a matter of law on theory that they failed to keep a proper lookout where it was physically impossible for the Cessna pilots to see the above approaching DC-9 due to the Cessna's high wing structure. Allen v. U.S., D.C.Mo.1973, 370 F.Supp. 992.

Pilot operating aircraft which crashed allegedly after encountering wake turbulence while approaching for landing behind commercial aircraft under Visual Flight Rules conditions was contributorily negligent and executrix was barred from recovery against government for alleged negligence of control tower employees. Thinguldstad v. U.S., D.C.Ohio 1972, 343 F.Supp. 551.

In order for representatives of pilot and his passengers to recover against the United States for death of their decedents in airplane crash, representatives had to establish some negligence on part of flight controller, a government employee, which negligence proximately caused crash. Michelmore v. U.S., D.C.Cal. 1969, 299 F.Supp. 1116, affirmed 455 F.2d 222.

Substantial Factor

## 684. — Medical malpractice

To prove causation or proximate cause in medical malpractice action brought under subsec. (b) of this section and section 2671 et seq. of this title, plaintiff had to introduce expert medical evidence affording reasonable basis for conclusion that it was more likely than not that government's conduct was a substantial factor in bringing about plaintiff's damages. Ellis v. U.S., D.C.S.C.1978, 484 F.Supp. 4.

## 685. Recognized or established torts

While Federal Tort Claims Act (FTCA) waives sovereign immunity for actions alleging torts by employees of government, it does not create novel causes of action; thus, mere allegation of breach of duty under federal law does not, by itself, state valid tort claim against government; FTCA only serves to convey jurisdiction when alleged breach of duty is tortious under state law, or when government has breached duty under federal law that is analogous to duty of care recognized by state law. Goldstar (Panama) S.A. v. U.S., C.A.4 (Va.) 1992, 967 F.2d 965, certiorari denied 113 S.Ct. 411, 121 L.Ed.2d 335.

Action under Federal Tort Claims Act (FTCA) exists only if state in which alleged misconduct occurred would permit cause of action for that misconduct to go forward. Campbell v. U.S., C.A.11 (Ga.) 1992, 962 F.2d 1579, certiorari denied 113 S.Ct. 1254, 122 L.Ed.2d 653.

District court lacked subject matter jurisdiction over Federal Tort Claims Act (FTCA) suit by Montana farmer who was forced into bankruptcy after payment for his participation in Soil Conservation Service (SCS) program was delayed for over two years, as under Montana law farmer could not have brought tort action for breach of covenant of good faith and only had breach of contract claim against government. Winchell v. U.S. Dept. of

ANNEX B4

"ANNEX B-4"

Laws not in Existence Cannot be used

Agriculture, C.A.9 (Mont.) 1992, 961 F.2d 1442.

Because Wisconsin law did not recognize negligent supervision action where only economic losses resulted from alleged negligence, Small Business Administration's (SBA) allegedly negligent supervision of its employee could not form basis of liability in subcontractor's action under Federal Tort Claims Act; subcontractor's losses from failure to receive advance payments on contracts were purely economic. Midwest Knitting Mills, Inc. v. U.S., C.A.7 (Wis.) 1991, 950 F.2d 1295.

The Federal Tort Claims Act (FTCA) was not intended to create new causes of action nor was it intended as means to enforce federal statutory duty; rather, the FTCA was intended to provide redress for ordinary torts recognized by state law. Howell v. U.S., C.A.11 (Ga.) 1991, 932 F.2d 915.

Postal Service's alleged failure to apply its merit selection system to former employee who sought to be rehired would not have been tort under Pennsylvania law, and thus, did not form basis for cause of action under Federal Tort Claims Act, since statute at issue, Postal Reorganization Act, imposed no specific duty upon postmaster for special benefit of others. Gaj v. U.S. Postal Service, C.A.3 (Pa.) 1986, 800 F.2d 64.

To succeed in action against United States under Federal Torts Claim Act, arising from accident involving head-on collision with jeep owned by postal service and driven by postal service employee which occurred in New Jersey, plaintiff must show that the United States would be liable as a private person under a tort theory recognized by New Jersey courts. Bushman v. Halm, C.A.3 (N.J.) 1986, 798 F.2d 651.

Jurisdiction was not established against United States in North Dakota corporation's action based on allegation that Small Business Administration was negligent in its review of corporation's loan application, in light of fact that NDCC 3203–01 had not established a tort duty on part of a private party in like circumstances. Butts Feed Lots, Inc. v. U.S., C.A. 8 (N.D.) 1982, 690 F.2d 669.

In determining congressional intent with regard to allocation of jurisdiction under subsec. (a)(2) of this section and subsec. (b) of this section and § 2671 et seq. of this title, it was relevant whether claim was established tort under general law; local lawmakers do not have unlimited power to bring subsec. (a)(2) claims under subsec. (b) of this section and § 2671 et seq. of this title by declaring them to be "torts". Roman v. Velarde, C.A. 1 (Puerto Rico) 1970, 428 F.2d 129.

General concept of subsec. (b) of this section and § 2671 et seq. of this title is to permit recovery in case of ordinary common law tort. U.S. v. Smith, C.A. 5 (Ga.) 1963, 324 F.2d 622.

Federal Tort Claims Act (FTCA) is limited waiver of sovereign immunity allowing recovery of compensatory damages against United States for ordinary torts recognized under state law. Livingston v. U.S., E.D.N.C.1993, 817 F.Supp. 601.

Federal Tort Claims Act does not create new causes of action, but merely imposes liability for torts already enumerated under state law. Moye v. U.S., E.D.N.C. 1990, 735 F.Supp. 179.

Claims under subsec. (b) of this section and sections 2671 et seq. of this title must be ones recognized by law of state in which claim arose; thus, such actions against United States based upon alleged violation of statutory and constitutional employment rights of former Federal Deposit Insurance Corporation employees would be dismissed for lack of subject-matter jurisdiction. Castro v. U.S., D.C.Puerto Rico 1984, 584 F.Supp. 252, affirmed 775 F.2d 399.

Subsec. (b) of this section and section 2671 et seq. of this title, require as a predicate for liability, the existence of a valid cause of action under the law of the forum state. Spock v. U.S., D.C.N.Y. 1978, 464 F.Supp. 510.

The structure of subsec. (b) of this section and section 2671 et seq. of this title indicates that Congress did not intend to waive immunity of the United States to tort claims based on theories not recognized at time such sections were passed. In re Bomb Disaster At Roseville, California, On April 28, 1973, D.C.Cal.1977, 438 F.Supp. 769.

The act or omission relied upon as a predicate for action brought under subsec. (b) of this section and 2671 et seq. of this title must be tortious under legislative or decisional law of state wherein the government's alleged negligence or

Federal Tort Claims Act

wrongful act or omission occurred. Gore v. U.S., D.C.Mich.1964, 229 F.Supp. 547.

### 686. Citizenship revocation

Allegedly wrongful revocation of citizenship would not have been actionable had it been performed by private party and, thus, no cause of action would be maintained under Tort Claims Act; withdrawal of citizenship is quasi-adjudicative action for which no private analog exists. Akutowicz v. U.S., C.A.2 (Conn.), 1988, 859 F.2d 1122.

### 687. Constitutional torts—Generally

Constitutional torts are not actionable under Federal Tort Claims Act; Act waives sovereign's immunity only for those torts actionable against individual based on state law. Holmes Herefords, Inc. v. U.S., D.Wyo.1990, 753 F.Supp. 901.

The Federal Tort Claims Act does not constitute a waiver of the sovereign immunity of the United States with respect to federal constitutional torts. Nichols v. Block, D.Mont.1987, 656 F.Supp. 1436.

Suit seeking damages from the United States on ground of alleged constitutional torts was barred by sovereign immunity. Adelona v. Webster, S.D.N.Y.1987, 654 F.Supp. 968.

Constitutional torts are outside purview of Federal Tort Claims Act [28 U.S.C.A. §§ 1346, 2671 et seq.]. Bosco v. U.S. Army Corps of Engineers, Fort Worth Dist., D.C.Tex.1985, 611 F.Supp. 449.

Subsec. (b) of this section and section 2671 et seq. of this title do not encompass constitutional torts. Barlow v. AVCO Corp., D.C.Va.1981, 527 F.Supp. 269.

United States is not liable for constitutional torts under Federal Tort Claims Act. Diminnie v. U.S., D.C.Mich.1981, 522 F.Supp. 1192, affirmed 728 F.2d 301, certiorari denied 105 S.Ct. 146, 469 U.S. 842, 83 L.Ed.2d 85.

Acts or omissions constituting constitutional torts support liability under subsec. (b) of this section and section 2671 et seq. of this title only if they constitute independent torts under state law. Liuzzo v. U.S., D.C.Mich.1981, 508 F.Supp. 923.

As private individual could not violate another individual's constitutional rights, United States could not, a fortiori, be liable under Federal Tort Claims Act for violation of constitutional rights inasmuch as liability of the United States was limited to claims for injuries which would be compensable if committed by private person. Reed v. Hadden, D.C.Colo.1979, 473 F.Supp. 658.

### 688. —— Due process

Claim that the United States was liable for violation of plaintiff's constitutional due process rights due to role of federal officers in obstructing extradition of a third party did not fall under subsec. (b) of this section and section 2671 et seq. of this title since it was founded on the Constitution and not laws of state of Alabama and, thus, the claim was barred by doctrine of sovereign immunity. Boda v. U.S., C.A. 11 (Ala.) 1983, 698 F.2d 1174.

Cause of action asserted against United States under subsec. (b) of this section and § 2671 et seq. of this title, for alleged violation of due process based on claim that conduct of Coast Guard in course of deciding whether to certify plaintiff's schooner operated to deprive plaintiff of opportunity to engage in carrying passengers for hire could not be maintained in district court, in view of subsec. (a)(2) of this section foreclosing consideration of civil action against United States, founded upon Constitution, for sum in excess of $10,000, where there was no allegation that vessel was ever physically taken or that right to use vessel for nonpassenger carrying purposes was ever interfered with. Coastwise Packet Co. v. U.S., D.C.Mass.1968, 277 F.Supp. 920, affirmed 398 F.2d 77, certiorari denied 89 S.Ct. 300, 393 U.S. 937, 21 L.Ed.2d 274.

### 689. —— Religious freedom

Where religious organization brought action against United States and various public officers in their official capacities, alleging that it had been subject of government-wide conspiracy to destroy a religion, and where religious organization alleged violations of U.S.C.A. Const. Amends. 1, 4, 5 and 9, organization could proceed under subsec. (b) of this section and section 2671 et seq. of this title while relying upon constitutional tort theory. Founding Church of Scientology of Washington, D.C. Inc. v. Director, Federal Bureau of Investigation, D.C.D.C.1978, 459 F.Supp. 748.

### 690. —— Search and seizure

Federal Torts Claims Act did not create federal cause of action and waive sovereign immunity for constitutional chal-

Annex D

Amendment proscribes the seizure of an individual's conversations obtained through unlawful electronic surveillance.

An individual's body can be subjected to a search under the Fourth Amendment. An individual can be required to undergo a strip search, which means he or she must remove his or her clothing so that each article can be examined for unlawful items. Strip searches are most often conducted by customs officials who have a real suspicion that an individual is attempting to smuggle contraband or weapons hidden on his or her person into the United States. A real suspicion is a subjective feeling that is supported by objective facts that can be articulated and would lead a reasonably experienced, prudent customs official to believe that a particular individual is hiding contraband on his or her body for smuggling purposes. A general suspicion of criminal activity is insufficient. The mere fact that a particular suspect is dressed in an unusual manner or appears to be anxious is not, in itself, adequate to warrant such a search. Each factor, however, might substantiate a real suspicion.

Police can also conduct strip searches to detect hidden evidence, drugs, or items that can be used against others or to cause self-inflicted harm to an individual who is being held in police custody. Such searches are regarded as a reasonable precautionary measure provided they are conducted without abuse and in a professional manner.

An individual can be subjected to a body search whereby body cavities and hair are examined for hidden contraband and weapons. This kind of search entails the greatest intrusion into an individual's physical privacy; therefore, officials must have a clear indication or plain suggestion that contraband might be hidden in a body cavity. This clear indication standard requires more than a real suspicion, which would justify a strip search.

In cases where the circumstances clearly indicate that police or government law enforcement agents conducted a strip or body search without justification, the victim can request that the court exclude the evidence from criminal prosecution. The victim can also initiate a CIVIL RIGHTS action against the officials responsible, since unreasonable searches violate the individual's Fourth Amendment rights.

Body fluids can be taken from a person under the Fourth Amendment only under proper circumstances. In the 1952 case of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, the U.S. Supreme Court reversed a defendant's conviction for possession of morphine that was based upon evidence obtained by pumping the defendant's stomach. Antonio Richard Rochin had swallowed morphine capsules when state police entered his home without a warrant. The Court held that the police methods were illegal and outrageous and indicated that due process of law cannot be brought about by methods that offend a sense of justice. Although this case was decided on due process grounds, it fixed the outside parameters for the kinds of searches and seizures of an individual's body that will be upheld. Searches and seizures that are shocking to the conscience are regarded as unreasonable.

In a related decision, however, the Court subsequently upheld a conviction of a person for vehicular manslaughter in *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). The police had extracted a blood sample from the defendant while he was unconscious in order to determine if he, the driver, was intoxicated at the time the accident took place. The Court stated that this case differed from *Rochin* in that there is nothing brutal or offensive in the extraction of a blood sample when it is done under the supervision of a physician. The Court did not regard a blood test under these circumstances as conduct that shocked the conscience.

Surgery that is performed to recover a bullet from the body of a criminal suspect does not ordinarily, in and of itself, violate the Fourth Amendment. However, certain states have adopted regulations that treat surgery for this purpose as an automatic violation of the Fourth Amendment. The Supreme Court has not entertained the issue of whether such surgery is a per se violation. In a majority of cases, certain criteria must be met if such a search and seizure is to be considered valid. It is essential that the evidence be relevant to the prosecution and be impossible to obtain any other way. In addition, the police must have probable cause to believe that the operation will produce the bullet. The surgery must be performed by a skilled surgeon after the court has decided, based upon medical evidence, that the operation constitutes a minor intrusion that can be performed without risk of harm or injury to the suspect. A court hearing must first be conducted during which the suspect has the chance to cross-examine and offer witnesses. Prior to the performance of the surgery, the suspect must be provided with an opportunity to appeal the decision of the court to allow the operation. This is generally done by way of an application for a writ of PROHIBITION.

**Exclusionary rule** The exclusionary rule provides that evidence obtained in violation of the Fourth Amendment cannot be used in a Federal prosecution. This rule was established because neither the Fourth Amendment nor Federal statutes provided for the punishment of law enforcement officials who violated the prohibition against unreasonable searches and seizures. It was intended to compel respect for the constitutional guarantee by removing the incentive to disregard it. This principle was first set forth in the 1961 landmark case of MAPP v. OHIO, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. For the first time, evidence that was obtained in violation of the Fourth Amendment by an illegal search and seizure was held to be inadmissible in a state criminal case. Four justices recognized that the Due Process Clause of the Fourteenth Amendment provided protection against state intrusion upon an individual's privacy under the Fourth Amendment.

The exclusionary rule does not eliminate the use of illegally seized evidence in all proceedings or against all individuals. A GRAND JURY can mandate a witness to answer questions based upon evidence procured from an unlawful search and seizure, since such questioning does not entail an independent invasion of privacy but is the ordinary abridgement of privacy common to all grand jury questions. The questioning is founded upon the fruits of a past unconstitutional search but does not involve a new violation. The Supreme Court reasoned that if questioning could not be based upon such evidence, the effective and expeditious functioning of the grand jury would be obstructed. The exclusionary rule only applies in cases where the court believes that its remedial objectives will most likely be achieved. The Supreme Court created a good faith exception to the exclusionary rule in *Segura v. United States*, ___ U.S. ___, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), when it upheld the use of evidence seized in good faith reliance on a search warrant later discovered to be defective.

Evidence that is subject to the exclusionary rule can properly be used to impeach, or discredit, the testimony of a witness in a criminal prosecution. In *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), an individual who was indicted for purchasing and possessing heroin testified on direct examination that he never possessed any narcotics and on cross-examination repeated the same statement. The court allowed the prosecution to introduce evidence of seized heroin, even though it had been excluded from use in the trial, to impeach the credibility of the defendant. The Supreme Court upheld this use of the evidence, since the exclusionary rule was designed to prevent unlawful seizures but not to prevent the exposure of perjured testimony.

Illegally obtained evidence that is directly related to the offense being tried, in addition to pretrial statements and physical objects, can be used for impeachment purposes.

*Fruit of the poisonous tree* The FRUIT OF THE POISONOUS TREE DOCTRINE is the principle that proscribes the use of evidence directly derived from an unlawful search and seizure. An illegal search taints, or infects, not only evidence obtained during the search but facts discovered by the process commenced by the search. The *independent source rule* is an exception to this doctrine. Facts that are discovered independently of the illegal search and seizure are ADMISSIBLE against the accused. If an individual voluntarily discloses information, for example, in exchange for being charged with a lesser offense, the primary taint ensuing from the illegal search and seizure is purged or eliminated so that the evidence can be used against him or her.

In order to invoke the exclusionary rule, an individual must have standing—which means that only the person whose reasonable expectation of privacy has been infringed by the arbitrary and improper action of law enforcement officials can seek to have the evidence excluded from his or her criminal prosecution. The proper procedure that must be followed to exclude such evidence is to make a motion to the court to suppress the evidence before the actual trial commences. In some cases, however, the illegality is not apparent until the evidence is introduced at the trial, or the accused may not have had the chance to make such a motion prior to the trial. In such situations, an objection can be made during the trial.

**Civil actions** In addition to the remedy of excluding unlawfully obtained evidence from a criminal prosecution, a civil action for DAMAGES can be commenced against the responsible parties. Under Federal law, such an action is known as a civil action for deprivation of rights.

In the case *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), plaintiff Webster Bivens claimed that agents, who were acting under claim of Federal authority, entered his apartment without a warrant and arrested him on narcotics charges. He was manacled in front of his family, who were also threatened with arrest. The agents conducted a complete search of the apartment and took Bivens to a Federal courthouse where he was questioned, booked, and subjected to a strip search. Bivens brought suit in Federal district court for $15,000 in damages from the six agents for humiliation, embarrassment, and mental distress caused by their conduct. He made the allegation that the arrest and search were performed without a warrant and that unreasonable force was used in his arrest. The district court dismissed the suit on the grounds that it failed to state a cause of action recognized by law, and the Federal court of appeals affirmed that decision.

*... there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.*

EARL WARREN

*The personal effects and possessions of the individual (all contraband and the like excepted) are sacrosanct from prying eyes, from the long arm of the law, from any rummaging by police.*

WILLIAM O DOUGLAS

"ANNEX B-5"

Damage Suit

ANNEX B5

*Search and seizure incident to lawful arrest is a practice of ancient origin and has long been an integral part of the law-enforcement procedures of the United States.*

*FRED M. VINSON*

Subsequently the Supreme Court granted CERTIORARI and reversed the decision. When a Federal law enforcement officer seeks entry under a claim of Federal authority and then acts in violation of the party's constitutional rights, there is no safety for the citizen except in the protection of judicial tribunals. The only alternative that remains to the victim is resistance, which might constitute a crime.

When an individual's interests in liberty have been invaded, damages have been traditionally awarded to remedy the wrong. The Fourth Amendment, however, does not make an express provision for pecuniary damages in cases of its violation. The Court ruled that the petitioner could recover monetary damages for any injuries he had suffered as a result of the agents' unconstitutional conduct. For these reasons, the Court reversed the decision of the court of appeals that the petitioner's lawsuit did not state a cause of action and remanded the case to the court of appeals to determine whether the agents were immune from liability because they were acting in their official capacity.

**Search warrants** The Fourth Amendment sets forth a specific description of the type of warrant by which a valid search and seizure will be authorized. Such a warrant must be based upon probable cause, be supported by an oath, and describe with particularity the place to be searched and the individuals, articles, and things to be seized. Such requirements prevent the government from taking arbitrary actions aimed at harassing certain individuals who possess unpopular views or criticize the government.

*An informer may be "wired" with an electronic device that transmits conversations without violating the Fourth Amendment rights of the persons whose conversations are transmitted without their knowledge.*

ANNEX BJ

A search warrant must be issued by a neutral and detached magistrate. The U.S. Supreme Court has read this requirement into the Fourth Amendment to protect individuals whose property is to be searched or seized, or both, by putting a neutral magistrate between them and law enforcement officials. The FEDERAL RULES OF CRIMINAL PROCEDURE implement the Fourth Amendment by requiring that search warrants be issued by an impartial magistrate. The term *magistrate* traditionally described individuals who were authorized to issue warrants. One warrant system, for example, allowed municipal court clerks who were not attorneys to issue warrants for violation of city ordinances. The Supreme Court upheld the validity of such warrants, since they were adequately removed from the prosecutor or police to make a neutral determination concerning whether probable cause actually existed that would justify the issuance of a search warrant. The Court recognized that in certain rural or sparsely populated areas of the United States, there might be a shortage of lawyers and judges to assume the obligation of issuing warrants. Federal law also expressly authorizes nonlawyers to be appointed as magistrates.

*Probable cause* Prior to the time that a search or seizure can be made of any individual, place, or object, a magistrate must determine that use of the search warrant will produce evidence of a crime. The magistrate's decision is based upon a finding of probable cause that a suspect has committed a crime, or that evidence of a crime will be discovered upon the conducting of a search. Probable cause must be demonstrated in the affidavit of the law enforcement officials, which accompanies their application for a search warrant.

Probable cause cannot be established by suspicion alone, however strong that may be. Rather, probable cause must be based upon known facts and circumstances that justify the reasonable belief of a law enforcement officer that an offense has been committed or that incriminating evidence might be discovered. The same standard of probable cause must be met for a valid arrest of an individual.

Probable cause does not constitute probable guilt but means that the apparent facts set forth in the affidavit are such that a reasonably discreet and prudent person would be led to the belief that a particular offense had been committed.

A warrant can be issued on HEARSAY that has been obtained from an informer if the officer discloses circumstances that support the conclusion that the informant is reliable and that the information has credibility. The informer need not

* SPECIFICITY OF OBJECTS OR THINGS TO BE SEIZED IS REQUIRED

TO CONDUCT A VALID SEARCH OR ISSUE A WARRANT: REQUIREMENT IS SUCH THAT ITEMS TO BE SEARCHED IS SPECIFIC

*A prison guard goes through a prisoner's cell as part of a routine search for concealed weapons. In 1984 the Supreme Court ruled that such searches do not violate the Fourth Amendment prohibition of unreasonable searches and seizures.*

be named. The informer's tip must provide a description of the criminal activity in adequate detail so that the magistrate can rely upon something more substantial than a casual rumor circulating in the underworld or an accusation based solely upon the general reputation of a particular individual.

*Specific description* The requirement that a search warrant must describe specifically the place to be searched and items to be seized defines and restricts the scope of a search and seizure. A description is adequate if the officer who is conducting the search can, with the exercise of reasonable effort, ascertain and identify the items to be searched. This requirement of particularity of description serves as insurance that the government will not be able to conduct a search indiscriminately, such as rummaging through an individual's personal property in search of any evidence of any possible crime. The officer is given as little discretion as possible and is prevented from searching property that he or she has no authority to enter. In the event that a search warrant fails to describe with sufficient particularity the place and subjects of the search, it is deemed constitutionally defective, and any evidence obtained under its authority is in violation of the Fourth Amendment.

Articles other than those that are described in a search warrant can be taken if they bear a reasonable relationship to the purpose of the search. Therefore the officers must have probable cause to believe that the item will help to bring about a conviction of the suspected crime and that seizure of the item is within one of the traditional exceptions to the requirement of a warrant.

**Warrantless searches and seizures** Certain exceptions exist to the Fourth Amendment principle that a search and seizure is invalid unless it is conducted under the authority of a properly issued search warrant. The Supreme Court recognized such exceptions so that evidence obtained by a warrantless search and seizure of evidence is admissible against the victim of the search in a criminal prosecution.

A warrantless search and seizure is lawful when it has been consented to by the victim of the search. In all other situations, a warrantless search will only be justified when exigent or emergency circumstances exist, for example, where evidence or life might be injured or destroyed unless there is immediate entry; there is HOT PURSUIT of a fugitive from justice; a legal arrest has been made; probable cause exists for the belief that a particular automobile contains contraband subject to seizure; or evidence, such as contraband, fruits or instrumentalities of criminal activity, is in plain view of the law enforcement official irrespective of whether an arrest is made.

*Consent* A search and seizure is legal even in the absence of a search warrant where proper consent is freely and voluntarily given. The issue of whether consent is voluntary is a QUESTION OF FACT, which must be determined from the sum total of all the circumstances. It is necessary that the two competing concerns, the

*... Countless law abiding citizens ... may have documents in their possession that relate to an ongoing criminal investigation. The consequences of subjecting this large category of persons to unannounced police searches are extremely serious.*

*JOHN PAUL STEVENS*

both decide if the evidence justifies restraint and determine the availability of bail.

A suspect arrested in violation of the Fourth Amendment requirements may not insist that the arrest is unconstitutional. A suspect whose arrest was unlawful—because a warrant was lacking, probable cause was absent, or even the very detention was secured by kidnapping—can be compelled to stand trial (*Ker v. Illinois*, 1886; *Frisbie v. Collins*, 1952). The only relief available to one arrested in violation of his constitutional rights is a civil suit for false arrest against the offending officers and their superiors.

*Search and Lesser Seizures.* Although no single or even predominant objective has been articulated for the arrest process, the purpose underlying the search is more clear. The goal of the search is the discovery and seizure of the tools or fruits of a crime and any other evidence relevant to the proof of a criminal event. Though the search process, in the main, invades only rights of property while arrest affects personal liberty, more-stringent standards have been imposed in the United States on the search process than on the arrest. In particular, resort to a judicial warrant is indispensable for all searches except in a few specified circumstances, while no such insistence on warrants exists with regard to arrests (*Watson*). Police possessing probable cause are therefore required to go before a magistrate to secure a warrant prior to conducting a search, but they may make an arrest without such authorization.

The process of federalization and constitutionalization that has affected the law of arrest has also been repeated with regard to the law of search. Since the very same provisions of the Fourth Amendment protect individuals against both unreasonable arrests and searches, judicial activism regarding arrests has affected in like manner the standards for searches.

The protection against unreasonable searches accorded by the Fourth Amendment to "persons, houses, papers, and effects" applies to the human body as well as to the property owned or possessed by an individual. To be protected, the searched place must be one in which a person has a reasonable expectation of privacy. Excluded are such properties as an open field, paint on the exterior of an automobile, or one's handwriting (*Katz*).

To secure a valid search warrant, the police must present a magistrate with evidence to establish probable cause that evidence of a crime is located in a particular place. They must also specify the items to be sought. The procedure for securing a search warrant is identical to that previously discussed for obtaining an arrest warrant. But while only an actual suspect of the crime is subject to arrest and not others able to testify to the offense, a search is more far-reaching. The premises and properties sought to be searched by the police need not belong to one suspected of a crime. It is sufficient that the police establish that evidence of a crime is to be found at such location.

The execution of a search warrant, unlike the making of an arrest, may be undertaken only by a police officer. A search must be conducted as soon as possible after the issuance of the warrant (*United States v. Nepstead*, 1970). The timeliness requirement is to ensure that probable cause still exists and that evidence is not removed. As in the case of the arrest warrant, the police must identify themselves before entering the premises to be searched. Once inside, they may seize all tools, fruits, and other evidence of crime that they discover within the searched area, regardless of whether such items were specified in the warrant (*Coolidge v. New Hampshire*, 1971). Police do not need a separate arrest warrant to detain, for the duration of the search, individuals found on the searched premises. The authority to do so is implied in the search warrant itself. The police may search any persons who are found on the premises and are named in the search warrant. The police may also arrest others present if there exists probable cause to do so, and in such a case they may search the arrestees as incident to the arrest.

In only few specified instances may the police conduct a warrantless search. These exceptions to the warrant requirement are limited and require strict conformity with applicable guidelines. The first exception, being a search incident to an arrest, is permissible following all lawful arrests. Viewed as a necessary precaution, such searches are permitted as a matter of course and do not depend on police knowledge that the suspect was armed or in possession of criminal evidence (*United States v. Robinson*, 1973). Searches incident to an arrest extend to those areas within reach, the "wingspan," of the suspect at the time of the arrest (*Chimel v. California*, 1969). Should the arrestee move during the period of arrest, his wingspan moves with him. For a suspect arrested in his automobile, the search area extends to the complete interior of the vehicle. For one arrested in a particular room in his house, the search may not go beyond that room. An incidental search, however, is valid only if it is conducted at the time of the arrest and cannot be undertaken after the arrestee's removal.

A second exception to the warrant requirement is known as the plain-view doctrine. Under it, police who are lawfully on certain premises and inadvertently encounter fruits or instrumentalities of a crime that are "in plain view" may seize such evidence without resort to a warrant. This exception would apply whenever the police unexpectedly discover contraband while executing an arrest or search warrant.

An automobile search is the third exception to the search-warrant requirement. Pursuant to it, police officers possessing probable cause that evidence of a crime is contained in an automobile or any other type of vehicle are permitted to search the vehicle without first securing a warrant (*Carroll v. United States*, 1925). This waiver of the warrant is justified by the mobile character of the premises to be searched and the consequent exigency of the situation. An automobile search is not confined to the interior of the vehicle. The search may extend to the trunk or any container in which suspected evidence might be held, as long as probable cause exists. A warrantless automobile search may be conducted at the time the vehicle is stopped, or the automobile may be towed promptly to a police station for a later search (*Chambers v. Maroney*, 1970).

Warrantless searches are also permitted in other situations classified as "emergencies." Several circumstances have been recognized by the courts as justifying warrantless searches because of their exigent nature. The police, when in "hot pursuit" of a suspected felon who flees into nearby premises, may enter the premises to search for the suspect without first obtaining a warrant. Another exception is the case of evidence that is likely to disappear if time is allowed to elapse; the police may thus administer a blood alcohol test without a warrant, because the blood alcohol content is likely to diminish with the passage of time.

Finally, the so-called stop-and-frisk rule is yet another exception not only to the warrant requirement for searches but also to the probable-cause standard. This rule permits a police officer to stop briefly and frisk superficially a person without first possessing either a warrant or probable cause if the officer has a "reasonable suspicion" that the individual engaged in, or is about to engage in, criminal activity (*Terry*). The detention permitted under this exception must be brief, and the search likewise is limited to a protective frisk, a patting-down of the suspect's outer clothing if the officer believes the suspect to be armed and dangerous. Evidence seized as a result of a stop-and-frisk is admissible only if the officer searched exclusively those areas capable of concealing a weapon. If the search was so limited, all evidence secured, whether weapons or other contraband, will be admissible in court.

Evidence that is seized in the absence of a warrant or in the pursuit of a defective warrant is subject to suppression or exclusion from the subsequent trial (*Mapp v. Ohio*, 1961). But the suppression of illegally obtained evidence, mandated by the "exclusionary rule" of the United States Supreme Court, has been undergoing drastic changes in recent years. Detailed discussion of the exclusionary rule's current content appears below.

*Eyewitness Identification.* Once a crime has been reported and a suspect has been seized, victims and other witnesses may be called upon to identify the suspect as part of the police and prosecution's investigatory process. Eyewitness identification may take various forms, including lineups, showups, and photographic displays. Although a suspect may not refuse to take part in identification procedures prior to trial, he or she must be accorded certain constitutional protections while undergoing any such process. These protections are to assure that the identification methods comply with the Fourteenth Amendment requirement of due process as well as with the Sixth Amendment right to counsel.

The most common method for identifying crime suspects is the lineup, a practice of placing the suspect, along with several others, on exhibition before the witness. Lineups may not be unnecessarily suggestive, or else they become violative of the suspect's constitutional right to due process (*United States v. Wade*, 1967). Although no clear-cut definition of suggestibility has been articulated, the placing of a black suspect in an otherwise all-white lineup is an example.

Attached w/ BIVENS

ANNEX B6

"ANNEX B-6"

**UNITED STATES INFORMATION SERVICE**
**THOMAS JEFFERSON CULTURAL CENTER**

*Receipt* № 58984

*Received from* ______ *the amount*
*of* ₱ 10.50 ( )
*for payment of the following fines or services:*

*LIBRARY*

- ____ *Overdue*
- ____ *Borrower's Card Replacement*
- ____ *Membership Card Replacement*
- ____ *On-line Searching*
- ____ *Membership Processing Fee*

*PHOTOCOPY SERVICES*

- ____ *Microforms*
- ____ *Proquest*
- ✓ *Xerox*

*Issued by:* [signature]

*DATE:* 4-11-98

**UNITED STATES INFORMATION SERVICE**
**THOMAS JEFFERSON CULTURAL CENTER**

*Receipt* № 58955

*Received from* Perfecto Velasco *the amount*
*of* ₱ 45.00 ( )
*for payment of the following fines or services:*

*LIBRARY*

- ____ *Overdue*
- ____ *Borrower's Card Replacement*
- ____ *Membership Card Replacement*
- ____ *On-line Searching*
- ____ *Membership Processing Fee*

*PHOTOCOPY SERVICES*

- ____ *Microforms*
- ____ *Proquest*
- ✓ *Xerox*

*Issued by:* [signature]

*DATE:* 03-24-98

"ANNEX B-7"



# UNITED STATES INFORMATION SERVICE
## THOMAS JEFFERSON CULTURAL CENTER

Receipt Nº 58988

Received from ______________________ the amount of ₱ 7.50 (______________________)

for payment of the following fines or services:

LIBRARY

- ______ Overdue
- ______ Borrower's Card Replacement
- ______ Membership Card Replacement
- ______ On-line Searching
- ______ Membership Processing Fee

PHOTOCOPY SERVICES

- ______ Microforms
- ______ Proquest
- ✓ Xerox

Issued by: ______________________

DATE: 4-17-98

# UNITED STATES INFORMATION SERVICE
## THOMAS JEFFERSON CULTURAL CENTER

Receipt Nº 59082

Received from ______________________ the amount of ₱ 19.50 (______________________)

for payment of the following fines or services:

LIBRARY

- ______ Overdue
- ______ Borrower's Card Replacement
- ______ Membership Card Replacement
- ______ On-line Searching
- ______ Membership Processing Fee

PHOTOCOPY SERVICES

- ______ Microforms
- ______ Proquest
- ✓ Xerox

Issued by: ______________________

DATE: 6-19-98

## UNITED STATES INFORMATION SERVICE
### THOMAS JEFFERSON CULTURAL CENTER

Receipt № 58738

Received from C the amount

of ₱ 12 (                                                          )

for payment of the following fines or services:

LIBRARY

- ______ Overdue
- ______ Borrower's Card Replacement
- ______ Membership Card Replacement
- ______ On-line Searching
- ______ Membership Processing Fee

PHOTOCOPY SERVICES

- ______ Microforms
- ✓ Proquest
- ______ Xerox

Issued by: [signature]

DATE: 8/3/98

## UNITED STATES INFORMATION SERVICE
### THOMAS JEFFERSON CULTURAL CENTER

Receipt № 59084

Received from C the amount

of ₱ 39 (                                                          )

for payment of the following fines or services:

LIBRARY

- ______ Overdue
- ______ Borrower's Card Replacement
- ______ Membership Card Replacement
- ______ On-line Searching
- ______ Membership Processing Fee

PHOTOCOPY SERVICES

- ______ Microforms
- ✓ Proquest
- ______ Xerox

Issued by: [signature]

DATE: 6-22-98

# UNITED STATES INFORMATION SERVICE
## THOMAS JEFFERSON CULTURAL CENTER

*Receipt* № 57731

*Received from* C *the amount*

*of* ₱ 12 — (                )

*for payment of the following fines or services:*

LIBRARY

- _____ *Overdue*
- _____ *Borrower's Card Replacement*
- _____ *Membership Card Replacement*
- _____ *On-line Searching*
- _____ *Membership Processing Fee*

PHOTOCOPY SERVICES

- _____ *Microforms*
- _____ *Proquest*
- ✓ *Xerox*

*Issued by:* [signature]

DATE: 9-26-97

# UNITED STATES INFORMATION SERVICE
## THOMAS JEFFERSON CULTURAL CENTER

*Receipt* № 59573

*Received from* [circle mark] *the amount*

*of* ₱ 7.50 (                )

*for payment of the following fines or services:*

LIBRARY

- _____ *Overdue*
- _____ *Borrower's Card Replacement*
- _____ *Membership Card Replacement*
- _____ *Online Searching*
- _____ *Menbership Processing Fee*

PHOTOCOPY SERVICES

- _____ *Microforms*
- _____ *Proquest*
- ✓ *Xerox*

*Issued by:* [signature]

DATE: 10-21-98

**UNITED STATES INFORMATION SERVICE**
**THOMAS JEFFERSON CULTURAL CENTER**

*Receipt* № 59563

*Received from* ______________________ *the amount*
*of* ₱ 31.50 (______________________)
*for payment of the following fines or services:*

*LIBRARY*

_____ *Overdue*
_____ *Borrower's Card Replacement*
_____ *Membership Card Replacement*
_____ *On-line Searching*
_____ *Membership Processing Fee*

*PHOTOCOPY SERVICES*

_____ *Microforms*
_____ *Proquest*
✓ *Xerox*

*Issued by:* ______________________

*DATE:* 10-10-98

posed of without a hearing. Nipp v. U.S., C.A.10 (Wyo.)1963, 324 F.2d 711.

If trial court accepts a plea of guilty from a man who is so crippled by psychosis that he cannot understand the proceedings or confer intelligently about the case, the resulting judgment is vulnerable to collateral attack. Thomas v. Cunningham, C.A.4 (Va.)1963, 313 F.2d 934.

Mental competency of accused to enter intelligent plea of guilty is available as ground of collateral attack on a federal conviction. U.S. v. McNicholas, C.A.4 (Md.)1962, 298 F.2d 914, certiorari denied 82 S.Ct. 1150, 369 U.S. 878, 8 L.Ed.2d 280.

Defendant moving to vacate sentence on ground that he was mentally incompetent to waive counsel and enter a plea of guilty at time of sentence was not barred from relief on ground that in absence of a showing that defendant had been adjudicated incompetent or that his sanity had been questioned or in doubt, a presumption of sanity must prevail. Pravlow v. U.S., C.A.5 (Ga.)1962, 298 F.2d 792.

If party were incompetent when he pleaded guilty, sentence must be vacated. Seidner v. U.S., 1958, 260 F.2d 732, 104 U.S.App.D.C. 214.

To have guilty plea set aside after imposition of sentence, defendant had to show fundamental defect resulting in the complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure, where defendant was confined in mental health facility by court order and a sentence of ascertainable duration had been imposed, although sentence was not yet definitive. Nesbitt v. U.S., E.D.Va.1991, 773 F.Supp. 795, affirmed 974 F.2d 1333, certiorari denied 113 S.Ct. 1024, 122 L.Ed.2d 170.

Defendant was not entitled to vacation of sentence on guilty plea on claims that he was suffering from mental problem at time of plea, where it appeared that mental examination had resulted in report reflecting medical opinion that defendant had sufficient mental capacity to understand charges and assist in his defense. Carroll v. U.S., D.C.Tex.1971, 335 F.Supp. 322, affirmed 452 F.2d 1199, certiorari denied 93 S.Ct. 147, 409 U.S. 860, 34 L.Ed.2d 106.

Where, from time of arrest up to time of guilty plea, accused was confined in federal house of detention in drug-free environment, he was not entitled to post-conviction relief on theory that he was under influence of drugs at time of plea of guilty. Tozzi v. U.S., D.C.N.Y.1969, 309 F.Supp. 261.

Federal prisoner was not entitled to have his judgment of conviction for bank robbery vacated on ground that there were "indicators that petitioner was not mentally competent" at time of his plea of guilty, where transcripts revealed that conversation which petitioner had with court was intelligent and showed a genuine remorse over involvement in the crime, so that the contention of incompetency being raised for the first time almost two and one-half years after petitioner had pleaded guilty was not entitled to any credence and did not entitle petitioner to an evidentiary hearing. Davenport v. U.S., D.C.Cal.1969, 301 F.Supp. 1033.

Petitioner who was informed of his entitlement to appointed counsel, who was given explanation of grand jury and indictment proceedings, who was informed of maximum penalty and who was asked if anyone had made threats or promises to induce a plea and who, with all that in mind, entered plea of guilty was not entitled to vacation of sentence on ground that he was suffering from effects of narcotics withdrawal and was confused at time of making of plea, in view of petitioner's statement at time of sentencing that he had "pretty well" gotten narcotics out of his system. Murphy v. U.S., D.C.Va.1966, 265 F.Supp. 481.

Although issue of insanity at time of commission of offense may not be raised by motion to vacate sentence, mental competency of accused to enter intelligent plea of guilty is available as ground for collateral attack. Sturrup v. U.S., D.C.N.C.1963, 218 F.Supp. 279.

Records failed to establish that defendant was entitled to have sentences vacated on ground that he was mentally incompetent at time he entered pleas of guilty to charges. Miller v. U.S., D.C.Fla. 1962, 207 F.Supp. 5.

### 210. Excessive detention

If a federal prisoner's plea of guilty was made following a voluntary confession, mere fact that such confession was obtained during a period of excessive, and hence illegal detention, would not in itself make the plea subject to collateral attack.

WIN

Kent v. U.S., C.A.1 (Mass.)1959, 272 F.2d 795.

### 211. Threats, promises, or coercion

A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void, and conviction based upon such a plea is open to collateral attack. Machibroda v. U.S., Ohio 1962, 82 S.Ct. 510, 368 U.S. 487, 7 L.Ed.2d 473. See, also, Raines v. U.S., C.A.4 (S.C.) & Va.1970, 423 F.2d 526; Crow v. U.S., C.A.10 (Kan.)1968, 397 F.2d 284; Howell v. U.S., C.A.10 (Kan.) 1966, 355 F.2d 173; Hudgins v. U.S., C.A.3 (Pa.)1965, 340 F.2d 391; Vicory v. Taylor, C.A.10 (Kan.)1964, 338 F.2d 954; Putnam v. U.S., C.A.10 (N.M.)1964, 337 F.2d 313; Luse v. U.S., C.A.10 (Colo.)1964, 326 F.2d 338; Semet v. U.S., D.C.Okl.1966, 253 F.Supp. 521, affirmed 369 F.2d 90.

Illness of defendant's wife while in prison is not kind of "aggravating factor" that might expand court's scope of review of collateral attack on sentence based on trial court's failure to determine that defendant's guilty plea was voluntary and not result of force or threats or of promises apart from plea agreement. U.S. v. Pollard, C.A.D.C.1992, 959 F.2d 1011, certiorari denied 113 S.Ct. 322, 121 L.Ed.2d 242.

Where defendant did not claim a mere technical violation of formal provisions of rule 11, Federal Rules of Criminal Procedure, Title 18, but, rather, error committed was of constitutional magnitude, since waiver of defendant's constitutional rights was based on a promise that was unkept, and the actual consequences of pleading guilty were contrary to the consequences conveyed to the defendant by the district court prior to acceptance of the guilty plea, defendant could collaterally attack conviction under this section. U.S. v. Mercer, C.A.7 (Ind.)1982, 691 F.2d 343.

Conclusory allegations that defendant's guilty pleas were "coerced and involuntary" because they were induced by government representations that his wife would be deported or prosecuted for related offenses if he did not plead guilty were insufficient to establish defendant's right to collateral relief in postconviction proceeding where it was apparent from record that, after electing to plead guilty only after several days of trial and after several codefendants changed their pleas to guilty, defendant acknowledged agreement with respect to his wife, yet assured trial court that his guilty pleas were wholly voluntary and not induced by any threats. U.S. v. Lambros, C.A.8 (Minn.)1980, 614 F.2d 179.

If accused had been promised by Assistant United States Attorney that he would receive a ten-year sentence he would be entitled to vacation of two twenty-year concurrent sentences imposed upon his guilty plea. Walters v. Harris, C.A.4 (N.C.)1972, 460 F.2d 988, certiorari denied 93 S.Ct. 947, 409 U.S. 1129, 35 L.Ed.2d 262.

Where, after being advised of her constitutional rights and effect of plea of guilty in each case, accused signed acknowledgment that no government agent had made any promise that she would receive light sentence if she would plead guilty, and on her arraignment in each case accused orally stated in answer to inquiries of court that her pleas of guilty were voluntary, and the court in each case made certain that accused voluntarily entered such pleas with a full understanding of her rights and consequences of such pleas, accused was not entitled to have her sentences vacated on ground that she was induced to plead guilty by false and misleading promises. Alvereze v. U.S., C.A.5 (Fla.)1970, 427 F.2d 1150.

Plea of guilty is void and subject to collateral attack in postconviction proceeding when threats or promises divest it of character of voluntary act. Runge v. U.S., C.A.10 (Kan.)1970, 427 F.2d 122.

Guilty plea would not be set aside as involuntary on basis that it was induced by misunderstanding in that accused thought that he was in fact to be deported, in absence of showing that either prosecution or accused's counsel had made any promise to accused that deportation would ensue on his plea. Briscoe v. U.S., 1968, 391 F.2d 984, 129 U.S.App. D.C. 146.

Even if government agent's statement that witness' "desires" would be discussed with the "proper authorities" amounted to a promise, use of witness' testimony that no promise had been made in relation to his pleading guilty and agreeing to testify against defendant involved no such abuse of due process as would entitle defendant to post-conviction relief, where all aspects of what had been said between witness and agent

*... PROMISE THAT WAS UNKEPT

were vigorously brought out before jury. Link v. U.S., C.A.8 (Mo.)1965, 352 F.2d 207, certiorari denied 86 S.Ct. 906, 383 U.S. 915, 15 L.Ed.2d 669.

Allegedly erroneous decision by federal District Court overruling motion of defendant to suppress evidence was not per se coercive of defendant's plea of guilty and did not entitle defendant to have his sentence vacated. Hudgins v. U.S., C.A.3 (Pa.)1965, 340 F.2d 391.

Bankrupt, who had been convicted on pleas of guilty to charges of concealing property from his bankruptcy estate and giving false testimony before bankruptcy court, who at no time protested his innocence, and who was fully interrogated as to his understanding of charges and effect of prosecutor's promise regarding dismissal of other counts of indictment could not assert, as ground for post-conviction relief, that his pleas of guilty were not voluntarily made but were induced by promise that remaining counts would be dismissed. Harris v. U.S., C.A.9 (Or.)1964, 338 F.2d 75.

That government counsel stated to accused's counsel that he felt court would not impose sentence of more than five years did not constitute improper means to induce petitioner to enter pleas of guilty, after which indeterminate sentence with maximum of eight years was imposed, especially where matter was not discussed with court. Holt v. U.S., C.A.7 (Ill.)1964, 329 F.2d 368, certiorari denied 85 S.Ct. 705, 379 U.S. 992, 13 L.Ed.2d 612.

Allegation that defendant was threatened with severe punishment by agent of United States unless he admitted his guilt, if true, would furnish sound ground for vacating sentence. U.S. v. Taylor, C.A.4 (N.C.)1962, 303 F.2d 165.

District court, in proceeding on motion to vacate sentence, did not err in determining that there was no coercion on part of prosecuting officers to extract a plea of guilty from prisoner. Williams v. U.S., C.A.9 (Idaho) 1961, 296 F.2d 216, certiorari denied 82 S.Ct. 621, 368 U.S. 997, 7 L.Ed.2d 534.

A sentence rendered upon a truly coerced plea of guilty is subject to collateral attack through habeas corpus, and is also amenable to proceedings under the statute respecting vacation of sentence, as are guilty pleas obtained through promises of leniency by the prosecution or those entered by the accused without knowledge of his rights. Watts v. U.S., 1960, 278 F.2d 247, 107 U.S.App.D.C. 367.

Sentences would not be vacated on ground that pleas of guilty had been coerced, where defendants were carefully interrogated by trial judge with respect to offense, competent attorney was appointed to represent them, they discussed offense freely and voluntarily and freely admitted guilt while fully aware of their rights. Juelich v. U.S., C.A.6 (Tenn.)1958, 257 F.2d 424, certiorari denied 79 S.Ct. 72, 358 U.S. 847, 3 L.Ed.2d 81, rehearing denied 79 S.Ct. 157, 358 U.S. 896, 4 L.Ed.2d 123.

Defendant was entitled to a vacation of judgment and sentence on the ground that statements made by the trial court were reasonably calculated to influence the defendant to the point of coercion into entering a plea of guilty. Euziere v. U.S., C.A.Okl.1957, 249 F.2d 293.

Where habeas corpus petitioner attacked judgment and sentence imposed by federal court on ground that prior to arraignment he was promised leniency if he would plead guilty and that trial judge advised him purpose of sentence was not to require him to do time in addition to state court sentences, attack was collateral and remedy was limited to proceeding under this section authorizing motion to vacate, set aside or correct sentence. Werntz v. Looney, C.A.Kan.1953, 208 F.2d 102.

Under circumstances including fact that jury was informed as to likelihood that leniency would be shown government witness in state and federal prosecutions and where the witness was questioned at length concerning any promises of leniency and his expectations of such in exchange for his testimony against defendant, surmise that there was an undisclosed leniency agreement with the witness did not provide foundation for vacating sentence. Neville v. U.S., D.C.Mo. 1978, 462 F.Supp. 614.

If plea of guilty was induced by promises or threats which deprived plea of its nature of a voluntary act, plea would be void and conviction thereon subject to collateral attack. Brown v. Turner, D.C.N.C.1966, 257 F.Supp. 734.

Neither the passage of time nor the absence of any showing that in event of a new trial a different result was likely required denial of defendant's motion to vacate judgment of conviction on ground that plea of guilty had been coerced. U.S. v. Tateo, D.C.N.Y.1963, 214 F.Supp. 560.

**212. Advisement of rights and consequences—Generally**

Where defendant knew of his right against self-incrimination when he entered his guilty plea, trial court's failure to inform him of such right when accepting his plea was not constitutional error which defendant could attack in a motion to vacate sentence filed after the time for appeal had expired. George v. U.S., C.A.9 (Idaho) 1980, 633 F.2d 1299, certiorari denied 101 S.Ct. 1397, 450 U.S. 933, 67 L.Ed.2d 368.

Issue of whether defendant who pled guilty was properly advised of consequences of his plea may be raised by motion attacking sentence. U.S. v. Phillips, C.A.6 (Ky.)1968, 403 F.2d 963.

Where defendant asserts that his guilty plea was entered by him without knowledge of his rights, plea suffers defect of inherent untrustworthiness, and sentence rendered thereon is amenable to proceedings to vacate sentence. De Leon v. U.S., C.A.5 (Tex.)1966, 355 F.2d 286.

Motion to set aside sentence, files and records conclusively established that defendant was entitled to no relief on contentions that he was not adequately advised of charge, was not adequately advised of rights, and did not intelligently enter his plea of guilty. Johnson v. U.S., D.C.La.1965, 252 F.Supp. 116, affirmed 359 F.2d 855.

**213. —— Costs of prosecution**

Defendant could have raised failure of trial court, on accepting his plea of guilty, to advise him that he could be assessed costs of prosecution on direct appeal, when the omission could have been corrected by remitting the costs, but could not have guilty plea set aside on such grounds in postconviction proceeding. Bachner v. U.S., C.A. 7 (Ill.)1975, 517 F.2d 589.

**214. —— Nature of charges**

Defendant who claimed she pled guilty to bank fraud in the mistaken belief that her act of ordering wire transfer of her employers' funds itself amounted to sufficient misrepresentation under the bank fraud statute, but that in fact she did not make a misrepresentation in connection with wire transfer order, sufficiently alleged that she pleaded guilty to a crime which she now understood not to encompass her conduct, and thus sufficiently alleged a due process challenge to validity of plea to form the basis of a motion to vacate, set aside or correct her sentence. U.S. v. Briggs, C.A.5 (Tex.) 1991, 939 F.2d 222.

Although district court's failure to inform defendant of charges against him violated rule governing procedure for acceptance of guilty plea, defendant was not entitled to relief on collateral attack to set aside guilty plea where indictment gave defendant notice of drug charges against him, including intent elements, and record indicated that defendant, who was a college graduate, understood nature of charges. Roberson v. U.S., C.A.8 (Mo.) 1990, 901 F.2d 1475.

Where charge of interstate transportation of forged travelers check was a simple one, defendant was represented by counsel and he was no stranger to judicial process, he was not entitled to vacation of sentence entered on his guilty plea on basis that he had been tricked into entering plea in that court, in questioning him prior to acceptance of plea, did not explain elements of crime charged and did not question defendant as to his intent. Sappington v. U.S., C.A.8 (Mo.)1972, 468 F.2d 1378, certiorari denied 93 S.Ct. 2164, 411 U.S. 970, 36 L.Ed.2d 693.

Guilty plea was insufficient, and defendant was entitled to vacation of sentence, where judge, rather than addressing defendant personally, directed inquiry to counsel, asking defendant only whether he understood charge and wished to plead guilty, and inquiry was almost solely directed to whether statements made by prosecutor and defense counsel were sufficiently complete and consistent to meet requirement of factual basis, not to what defendant understood concerning charge, and defendant, a borderline mentally deficient person, was not told what constituted offense and possibility of guilt of lesser included offenses. Monroe v. U.S., C.A.5 (Fla.)1972, 463 F.2d 1032.

Defendant convicted of robbing another of property belonging to United States

District Court didn't inform Defendant of Rights

Rule 11
Note 440

RULES OF CRIMINAL PROCEDURE

guilty. U.S. v. Scharf, C.A.Mo.1977, 551 F.2d 1124, on remand 435 F.Supp. 177.

If district court fails to comply with this rule, plea entered thereunder must be set aside and case must be remanded in order to permit defendant to plead anew. U.S. v. O'Donnell, C.A.Ariz.1976, 539 F.2d 1233, certiorari denied 97 S.Ct. 386, 429 U.S. 960, 50 L.Ed.2d 328.

Conviction based on guilty plea was reversed where district court did not personally inform defendant of the constitutionally protected rights which she would be waiving if her plea was accepted and did not ascertain whether defendant understood such rights and voluntarily waived them. U.S. v. Narizi, C.A. Tex.1976, 538 F.2d 1213.

Imposition of mandatory special parole term is "consequence of the plea" within meaning of provision of this rule prohibiting district court from accepting guilty plea without first addressing defendant personally and determining that plea is made voluntarily with understanding of consequences of the plea, and thus failure of court when taking plea to advise defendant that mandatory six-year special parole term would be appended to his sentence required that conviction be set aside and defendant permitted to plead anew. U.S. v. Harris, C.A.Cal.1976, 534 F.2d 141.

Where Assistant United States Attorney on May 6, 1966, and on June 10, 1966, asked defendant in open court at time he pleaded guilty if his pleas were voluntarily and understandingly made and defendant respondent affirmatively and defendant at evidentiary hearing on motion to vacate admitted that guilty pleas were given freely and voluntarily, defendant was not entitled to relief on claim that trial court accepted pleas without first determining that they were voluntarily and understandingly made as required by these rules. Greer v. U.S., C.A.Ga.1970, 429 F.2d 7.

Failure of trial court, prior to United States Supreme Court decision requiring that defendant, whose guilty plea has been accepted in violation of provision of this rule providing that trial court must personally address defendant and determine whether plea is voluntary, be permitted to plead anew to ask defendant if his guilty plea to interstate transportation of stolen motor vehicle was made voluntarily with understanding of nature of charge and consequences of plea, did not entitle defendant to have his plea set aside where he obtained evidentiary hearing as to voluntariness of plea on his motion to set aside plea and to vacate sentence. McDonald v. U.S., C.A.Ga.1970, 428 F.2d 447.

Deficiencies in determination of understanding and voluntariness at time plea is offered do not require that conviction be set aside if hearing on voluntariness discloses that plea was in fact freely, understandingly, and voluntarily made. U.S. v. Howard, C.A.N.C. 1969, 407 F.2d 1102.

Mere showing that court failed to comply with provision of this rule relating to ascertaining whether plea of guilty was entered with full knowledge is insufficient to entitle petitioner to have his sentence vacated and his guilty plea expunged. Zamora v. U.S., C.A. Guam 1968, 397 F.2d 254.

The failure to comply with requirement of this rule in effect in 1954 that court determine that guilty plea was made voluntarily with understanding of nature of charge does not entitle petitioner to postconviction relief as a matter of law. Halliday v. U.S., C.A.Mass. 1968, 394 F.2d 149, affirmed 89 S.Ct. 1498, 394 U.S. 831, 23 L.Ed.2d 16, rehearing denied 89 S.Ct. 2106, 395 U.S. 971, 23 L.Ed.2d 761.

Failure of trial court to comply with provision of this rule requiring court before accepting guilty plea to determine that plea is made voluntarily with understanding of nature of charges did not per se require vacation of sentence and guilty plea. U.S. v. Del Piano, C.A.Pa.1967, 386 F.2d 436, certiorari denied 88 S.Ct. 2306, 392 U.S. 936, 20 L.Ed.2d 1395.

Federal district court did not err in denying motion of defendant to vacate sentence, on ground that district court did not comply with this rule in accepting plea of guilty in that it did not determine whether defendant understood nature and consequence of charges against him, and whether he was mentally competent when he pleaded guilty, and on ground that indictment was fatally defective. Rubenstein v. U.S., C.A.N.J.1967, 385 F.2d 490.

Any noncompliance with provision of this rule requiring trial court to ascertain whether plea of guilty was made with an understanding of that charge was harmless where government clearly proved by testimony of petitioner's attorney on petitioner's motion to vacate sentence that petitioner was fully aware of the nature and elements of the offense with which he was charged at time he entered his plea. Laughner v. U.S., C.A.Fla.1967, 373 F.2d 326.

Coram nobis would be granted setting aside a federal conviction where there was a failure to inform defendant adequately of his right to court appointed counsel prior to receipt of his plea of guilty. Mathis v. U.S., C.A.N.C.1966, 369 F.2d 43.

Provision of rule requiring court to determine that guilty plea is made voluntarily is mandatory, and failure of court to find at time of arraignment or waiver that plea was intelligently entered and that counsel was intelligently waived would require vacating judgment of conviction, even though right to counsel was in fact intelligently waived and plea was made voluntarily and with full knowledge of nature of charge and maximum penalty to be imposed. Heiden v. U.S., C.A.Ariz.1965, 353 F.2d 53.

Where defendant pleaded guilty before decision of the United States Supreme Court that judge before accepting guilty plea should personally address defendant as to his understanding of nature of charge, mere absence of transcript of arraignment proceeding did not demonstrate, on motion to vacate sentence,

468

PLEAS

Promise Unconst

Rule 11
Note 444

that sentencing judge had failed to follow provisions of this rule. Weaver v. U.S., D.C.Mo. 1970, 317 F.Supp. 4, affirmed 437 F.2d 431, certiorari denied 92 S.Ct. 157, 404 U.S. 859, 30 L.Ed.2d 101.

441. —— Form of plea

Entry of "technical" plea of guilty was equivalent to general plea of guilty and word "technical" was mere surplusage, and petitioner, who had served sentence, was not entitled to have plea vacated and conviction set aside on ground that plea did not conform to any of authorized pleas set forth in this rule or that it was not voluntarily and understandingly made. U.S. v. Cariola, D.C.N.J.1962, 211 F.Supp. 423, affirmed 323 F.2d 180.

442. —— Promises and inducements

Guilty plea induced by a court-approved promise that defendant could nevertheless appeal on nonjurisdictional grounds was involuntary, and judgment entered upon such plea would be vacated. U.S. v. Hill, C.A.Ga.1977, 564 F.2d 1179.

Where defendant and a third party who had no connection with the government were the only persons actually involved in scheme to "fix" judge, assertion that defendant was persuaded to plead guilty by statements of the third party which led defendant to believe that the judge was "fixed" did not entitle defendant to withdraw his guilty plea. U.S. v. Ulano, D.C.Cal.1979, 468 F.Supp. 1054, affirmed 614 F.2d 1257, rehearing granted 625 F.2d 1383.

Bare allegation that plea of guilty to forgery charge was induced by illegally obtained confession provided no independent ground for attacking guilty plea. U.S. ex rel. Harden v. Follette, D.C.N.Y.1970, 333 F.Supp. 371, affirmed 450 F.2d 879, certiorari denied 92 S.Ct. 343, 404 U.S. 966, 30 L.Ed.2d 286.

443. —— Void statute and change in law

When a defendant has pleaded guilty to a statute prior to the time that an absolute, retroactively applicable defense is declared, the validity of the guilty plea is destroyed. Hupert v. U.S., C.A.Mo.1971, 448 F.2d 668.

Mere fact that defendant pleads guilty to charge under statute later declared unconstitutional does not necessarily mean that the plea should be voided, as a voluntary plea of guilty made in light of then applicable law does not become vulnerable because later judicial decisions indicate that plea rested on faulty premise. Parker v. U.S., C.A.Ind.1970, 433 F.2d 15, certiorari denied 91 S.Ct. 908, 401 U.S. 925, 27 L.Ed.2d 828.

Fact that statute is later held to be unconstitutional does not of itself render it necessary to set aside guilty plea. Alaway v. U.S., D.C. Cal.1971, 329 F.Supp. 78, reconsideration denied 345 F.Supp. 978.

444. —— Miscellaneous grounds

Because defendant failed to allege or prove any specific prejudice resulting from the technical noncompliance with this rule pertaining to the acceptance of a guilty plea, the lower court properly found that the trial court's alleged technical noncompliance with said rule did not justify relief. U.S. v. Laura, C.A.Pa. 1981, 667 F.2d 365.

Principle that defendant was not barred by guilty plea to felony indictment from challenging constitutionality of that indictment under U.S.C.A. Const. Amend. 14 § 1 did not apply where defendant did not seek to attack on due process grounds count of two-count indictment to which he pleaded guilty, but where defendant instead sought to invalidate his plea on basis of count to which he did not plead guilty and which was, in fact, dismissed. U.S. v. Hawthorne, C.A.Pa.1976, 532 F.2d 318, certiorari denied 97 S.Ct. 254, 429 U.S. 894, 50 L.Ed.2d 177.

That defendant misgauged strength of prosecution's case against him was not sufficient to invalidate guilty plea. Stevenson v. Mathews, C.A.Wis.1976, 529 F.2d 61, certiorari denied 96 S.Ct. 3181, 426 U.S. 934, 49 L.Ed.2d 1193.

Fact that term "Mrs." had been inserted in transcript in designating person who pleaded guilty, thus making it appear that accused's mother who had also been indicted had pleaded guilty rather than accused, did not warrant invalidation of accused's conviction based upon the plea on theory that confusion may have been engendered in accused's mind and that plea had not been properly taken where it was clear from record that accused himself had entered the plea of guilty. D'Allesandro v. U.S., C.A.N.Y.1975, 517 F.2d 429.

Nothing in judgment declaring that conditions existing in county jail, in which defendant was held prior to guilty plea to federal offenses constituted the infliction of cruel and unusual punishment vested defendant with a right to have his solemn plea of guilty set aside or to vacation of sentence duly imposed. U.S. v. Barrett, C.A.Fla.1975, 514 F.2d 1241.

In absence of a showing of prejudice to defendant, the trial court's failure to comply strictly with decision of the court of appeals, requiring that the defendant be placed under oath at the time of taking his guilty plea, that the district court state that plea agreements were permissible and that the defendant and all counsel have the duty to disclose the existence and details of any agreement which relates to the plea tendered and that specific inquiry be made as to the existence of such an agreement before a plea is accepted, did not necessitate vacation of defendant's plea of guilty to one count of mail fraud. U.S. v. Maggio, C.A.Ala.1975, 514 F.2d 80, certiorari denied 96 S.Ct. 563, 423 U.S. 1032, 46 L.Ed.2d 405, rehearing denied 518 F.2d 1407.

Generally, imposition of a sentence other than that expected by defendant, or predicted by his counsel, is not adequate ground for vacating a sentence. Calabrese v. U.S., C.A. Mass.1974, 507 F.2d 259.

469

rights made with sufficient awareness or relevant circumstances and likely consequences; and in striving to avoid that situation, and in view of peculiar circumstances of case, the court would honor agreement and consider merits of appeal. U.S. v. Cox, C.A.Mich.1972, 464 F.2d 937.

An unkept bargain which has induced a guilty plea is ground for relief from sentence. Walters v. Harris, C.A.N.C.1972, 460 F.2d 988, certiorari denied 93 S.Ct. 947, 409 U.S. 1129, 35 L.Ed.2d 262.

If state district attorney did induce guilty plea by promise that was not kept, petitioner would be entitled to relief from plea. Macon v. Craven, C.A.Cal.1972, 457 F.2d 342.

Petitioner could show that entry of guilty plea was not voluntary by showing that he was affirmatively misled to believe that he would be released on parole by a certain date and that he entered his plea in reliance on that advice; however, any unilateral expectations on petitioner's part as to likely date of parole, not induced by any affirmative misrepresentations, could not provide basis for challenging voluntariness of guilty plea. U.S. v. Baylin, D.C.Del.1982, 531 F.Supp. 741, remanded on other grounds 696 F.2d 1030.

That defense counsel purportedly advised petitioner, in terms of "the very strongest probability," of the length of time which the parole board would choose to keep petitioner in prison, though certainly an exercise of bad judgment, was not a misstatement of "easily accessible fact" for which petitioner would be entitled to obtain vacation of sentence on ground that his negotiated guilty plea was constitutionally invalid in that he was allegedly misled as to effect of plea on his eligibility for parole. Lambert v. U.S., D.C.Ga.1975, 392 F.Supp. 113.

435. —— Competency of defendant

Where basic issue on motion to vacate and set aside judgments of conviction was voluntariness of pleas of guilty entered by defendants and defendants started out with a specific charge that they lacked capacity from narcotics, and counsel's statement that he had no objection to going into narcotics issue was followed by extensive evidence on subject, there was no error in deciding issue, notwithstanding claim that issue was "not before the Court". Barton v. U.S., C.A.Fla.1972, 458 F.2d 537.

Where defendant stated, before sentence was to be imposed for escape, that he did not remember anything from time he left honor camp of federal penitentiary until he woke up in hospital after being involved in collision and that he did not remember leaving penitentiary, court properly set aside his guilty plea. U.S. v. Coffer, C.A.Kan.1971, 451 F.2d 387.

Guilty plea could not be assailed on ground that defendant did not possess criminal intent necessary to support conviction. U.S. v. Smith, C.A.N.C.1971, 448 F.2d 726.

Claim of intoxication, whether from alcohol or benzedrine, as defense to charges in indictment, cannot be raised or considered in motion to vacate plea. Deese v. U.S., D.C.S.C. 1969, 303 F.Supp. 619.

436. —— Consequences of plea and nature of charge

Where neither judge nor district attorney read charges to defendant, but defendant was read abbreviated version of indictment, which failed to mention crucial element of offenses, federal district court's failure to adequately inform defendant of nature of charges against him required automatic reversal of his conviction on guilty plea, notwithstanding that defendant acknowledged in response to separate inquiry by court that he had opportunity to go over copy of indictment with his attorney. U.S. v. Punch, C.A.La.1983, 709 F.2d 889.

Defendant's sentence would not be vacated on ground that trial court that accepted defendant's guilty plea failed to advise him of his right to plead not guilty and of his right to counsel at trial, since transcript revealed that defendant unequivocally told trial court that he understood he had a right to a trial but that he would waive that right and plead guilty. U.S. v. Deal, C.A.Ga.1982, 678 F.2d 1062.

Where defendant was accused of illegally possession specific amount of named forbidden drug with intent to distribute it, reading of indictment, followed by judge's offer to answer any questions defendant might have about it, was satisfactory and sufficient explanation of nature of the charge, and defendant's response that he understood and had no questions was likewise sufficient assurance that, given nature of charge, and character and capacities of defendant, defendant understood the charge, though indictment was read by prosecutor and not by court. U.S. v. Sanchez, C.A.Tex.1981, 650 F.2d 745.

Where, at the guilty plea hearing, defendant was not told that he would not have right to continued assistance of counsel, assigned or retained, should be decide to charge his plea and go to trial, where he was not informed of his fundamental right to confront and cross-examine witnesses who would testify against him, deficiencies implicated core values of adversary system and could not be considered harmless and, thus, defendant's sentence would be vacated. U.S. v. Carter, C.A.Pa.1980, 619 F.2d 293.

Mere prediction by defense counsel of likely, though ultimately unfulfilled, favorable consequences of a guilty plea will not taint an otherwise valid sentence. Knight v. U.S., C.A.Mass. 1979, 611 F.2d 918.

Guilty plea entered by defendant in drug prosecution was not subject to vacation in collateral proceedings on theory that defendant had not been properly informed of possible range of punishment and that trial judge did advise him of nature of federal or special parole where, although information concerning special parole was given by United States

Attorney rather than by judge himself, message was received in judge's presence, defendant stated in open court that he understood it, and there was no showing of coercion. Howard v. U.S., C.A.Tex.1978, 580 F.2d 716.

Where district judge, before accepting guilty plea, failed to advise defendant that court, upon accepting his guilty plea, had the power to impose a lifetime special parole in addition to maximum prison term authorized by statute and instead of informing defendant of maximum parole term, advised defendant that in addition to maximum prison term of 15 years and a fine of $25,000 it had authority to impose "a special parole term of at least three years * * * a minimum parole term" and transcribed colloquy directly between court and defendant, looked at most favorably to government, indicated that defendant construed court's remarks about the parole term to mean a "three years special," guilty plea would be vacated and defendant given opportunity to plead again to indictment. U.S. v. Alejandro, C.A.N.Y.1978, 569 F.2d 1200.

Correct application of fundamental error standard to complaints relating to defendant's understanding of the consequences of his plea requires an examination of the circumstances at the time of the plea and also at the sentencing hearing, when the motion to withdraw could still have been made. Bachner v. U.S., C.A.Ill.1975, 517 F.2d 589.

Where defendant was adequately advised of consequences of guilty plea at morning session on motion for change of plea, court's failure to repeat that advice when the hearing was reconvened later the same morning did not require reversal. U.S. v. Davis, C.A.Wis.1975, 516 F.2d 574.

Failure to inform defendant that, by pleading guilty, he might be waiving constitutional claim which he apparently intended to preserve, notwithstanding any purported stipulation to the contrary, did not require that plea be set aside where claim of unconstitutionality in jury selection process was patently without merit. U.S. v. Warwar, C.A.Puerto Rico 1973, 478 F.2d 1183.

Failure to include cautionary statement to accused before accepting his plea of guilty, informing him that upon his being sentenced under particular section of Criminal Code he was not entitled to parole, constituted a failure to comply with provision of this rule governing acceptance of guilty pleas, and such failure made it necessary for appellate court to vacate plea and remand case for further hearing at which accused might plead anew. U.S. v. Rex, C.A.Mich.1972, 465 F.2d 875.

Failure of court to make inquiry as to defendant's understanding of nature of charge and consequences of guilty plea required vacation of guilty plea and grant of opportunity to replead. U.S. v. Birmingham, C.A.Okl.1971, 454 F.2d 706, certiorari denied 92 S.Ct. 2424, 406 U.S. 969, 32 L.Ed.2d 668.

Plea cannot be vacated on ground that defendant anticipated that by pleading guilty he would get lighter sentence, but government must not be allowed to lure defendant into plea on false information. U.S. v. Battle, C.A. Fla.1971, 447 F.2d 950.

Under then existing law, guilty plea was not required to be set aside when record revealed that trial judge in 1960 failed to make determination that plea was made voluntarily with understanding of nature of charge, since government could otherwise show that plea was in fact voluntary and that defendant had an understanding of the charge. Diggs v. U.S., C.A.La.1971, 447 F.2d 460.

Petitioner was not entitled to have his conviction set aside on basis that he was not properly informed of consequences of his guilty plea, where he knowingly and voluntarily entered a plea of guilty, even if he did not realize every consequence of such plea. U.S. v. Offen, C.A.Ala.1971, 439 F.2d 1079.

Where petitioner was told specifically that sentence had to be a minimum of one year and a maximum of twenty years in accordance with state law, petitioner was not entitled to have his plea of guilty set aside on ground that he did not understand consequences of his plea. Fields v. U.S., C.A.N.Y.1971, 438 F.2d 205, certiorari denied 91 S.Ct. 2214, 403 U.S. 907, 29 L.Ed.2d 684.

Defendant was not entitled to vacation of sentences imposed upon plea of guilty to charges of possessing and selling heroin and marihuana on ground that his guilty pleas were not voluntarily and understandingly made because the trial court failed to inform him that his sentence would not be subject to parole. Onick v. U.S., C.A.Tex.1970, 425 F.2d 1292, certiorari denied 91 S.Ct. 92, 400 U.S. 846, 27 L.Ed.2d 83.

Where at time of sentencing after defendant's plea of guilty court discussed defendant's eligibility for parole when in fact offense for which defendant was sentenced precluded parole, defendant was entitled to vacation of sentence and judgment even though entry of guilty plea and imposition of sentence were at two different hearings. Spradley v. U.S., C.A. Fla.1970, 421 F.2d 1043.

Where petitioner at arraignment stated to judge that he wanted judge to consider making sentence run concurrent with time he was already serving but, in fact, sentence for escaping could not be made concurrent and petitioner's misapprehension as to possible consequences was never corrected prior to acceptance, sentence entered on his plea of guilty for escape should be set aside. Smith v. U.S., C.A.Ky.1968, 400 F.2d 860.

Where defendant was not advised by court or his counsel that there was no possibility of probation or parole when he pleaded guilty to narcotics charge, he did not plead guilty with understanding of consequences and in absence of compliance with provision of this rule providing that court shall not accept guilty plea

WIN

Prosecution breaches Agreements

**242. Contractual nature of plea agreement**

Plea bargain should be reduced to writing and terms disclosed to and approved by court; it is most distasteful to be confronted with conflicting testimony by lawyers with respect to terms of agreement which ought to be clear and undisputable. U.S. v. DeMichael, C.A.Wis. 1982, 692 F.2d 1059, certiorari denied 103 S.Ct. 1878, 461 U.S. 907, 76 L.Ed.2d 809.

Plea bargaining, though a matter of criminal jurisprudence, is subject to contract law standards. U.S. v. Arnett, C.A.Wash.1979, 628 F.2d 1162.

Although plea bargaining is a matter of criminal jurisprudence, a plea bargain itself is contractual in nature and subject to contract law standards, and thus any dispute over terms of agreement is to be resolved by objective standards. U.S. v. Krasn, C.A.Cal.1980, 614 F.2d 1229.

Fundamental contract and agency principles must be applied to plea bargains as best means to fair enforcement of parties' agreed obligations. U.S. v. McIntosh, C.A.Va.1979, 612 F.2d 835.

Plea bargain is contractual in nature and when prosecution breaches agreement, entire legal basis for plea fails. Petition of Geisser, C.A.Fla.1977, 554 F.2d 698.

Plea bargaining is an accepted folkway of criminal jurisprudence onto which some, but not all, contract criteria have been superimposed; analogous to promissory estoppel, plea bargaining must have more substantiality than mere expectation and hope, it must have explicit expression and reliance and is measured by objective, not subjective, standards. Johnson v. Beto, C.A.Tex.1972, 466 F.2d 478.

Contract principles should be applied to plea agreements insofar as their utilization will insure defendant what is reasonably due in the circumstances. U.S. v. Lieber, D.C.N.Y.1979, 473 F.Supp. 884.

**243. Multiple defendants**

No constitutional right of petitioner was violated by prosecution's offering codefendant a "better deal" than defendant in plea negotiations. McMillian v. U.S., C.A. Iowa 1978, 583 F.2d 1061, certiorari denied 99 S.Ct. 727, 439 U.S. 1049, 58 L.Ed.2d 709.

**244. Duty and function of court—Generally**

Judge has supervisory duty to determine, from standpoint of public interest, after considering nature of charges and facts involved, whether reducing plea is so unreasonable that prosecutor is not properly carrying out his function. U.S. v. Barker, C.A. Guam 1982, 681 F.2d 589.

When it is claimed that statements were made during plea negotiations and are thus admissible, trial court must first determine whether accused exhibited actual subjective expectation to negotiate plea at time of discussion and, second, whether expectation of accused was reasonable given totality of objective circumstances. U.S. v. Doe, C.A.Wash. 1981, 655 F.2d 920.

District court has responsibility to develop satisfactorily the terms of a plea bargain. U.S. v. Arnett, C.A.Wash.1979, 628 F.2d 1162.

The district court may not issue a blanket proscription of plea agreements of the kind where the prosecution drops some charges in exchange for the defendant's guilty plea to other charges. U.S. v. Maggio, C.A.Ala.1975, 514 F.2d 80, certiorari denied 96 S.Ct. 563, 423 U.S. 1032, 46 L.Ed.2d 405, rehearing denied 518 F.2d 1407.

Prior to accepting a guilty plea the trial court should inquire of the prosecution, the accused and his counsel whether there have been any plea negotiations and should advise the accused that the United States Supreme Court has specifically approved plea bargaining as an essential component of the administration of justice. Moody v. U.S., C.A.Ill.1974, 497 F.2d 359.

Judge in addressing defendant personally to determine whether his plea of guilty is voluntary should ask United States Attorney, prisoner and prisoner's counsel whether there have been plea negotiations and should advise defendant that the United States Supreme Court has specifically approved plea bargaining and said it is an essential component of administration of justice to be encouraged and that therefore defendant may advise court truthfully of any plea negotiation without slightest fear of incurring disapproval of court and a negative response to such inquiry would finally conclude subject matter and prevent subsequent litigation. Walters v. Harris, C.A.N.C. 1972, 460 F.2d 988, certiorari denied 93 S.Ct. 947, 409 U.S. 1129, 35 L.Ed.2d 262.

Guilty plea is not necessarily invalid because it rests upon bargain with prosecutor, but knowledge of existence of such agreement, its terms, and negotiations which led to it is crucial to effective discharge of court's responsibility to assure that plea is not accepted unless it is voluntarily made. Jones v. U.S., C.A.Nev. 1970, 423 F.2d 252, certiorari denied 91 S.Ct. 79, 400 U.S. 839, 27 L.Ed.2d 73.

In determining whether an agreement has been reached, court must focus on whether there was a bargained for exchange and whether both parties agreed to perform the terms of that exchange. U.S. v. McLaughlin, D.C.Md.1981, 509 F.Supp. 857.

In reviewing a plea bargain, the obligation of the court is to supervise the fairness of the bargain, with the court intervening only on conclusion that the bargain exceeds proper bounds. U.S. v. Munroe, D.C.Tenn.1980, 493 F.Supp. 134.

**245. —— Participation of court**

Judges are not to participate in plea bargaining; their role is to be limited to acceptance or rejection of agreements after thorough review of all relevant factors and they must independently satisfy themselves that acceptance of

* Judges are not to PARTICIPATE in Plea BARGAINING

** Breach of Plea Bargain by Government

agreement adequately protects rights of defendant and interest of justice, and they must set forth their reasonings for accepting or rejecting plea. U.S. v. Mack, C.A.Minn.1981, 655 F.2d 843.

Trial judge's participation in plea agreement discussions constitute plain error sufficient for court of appeals to raise issue sua sponte. U.S. v. Adams, C.A.Tex.1981, 634 F.2d 830.

Provision of this rule expressly forbidding court from participating in plea bargaining states a standard for federal courts, and not necessarily constitutional inhibition. Blackmon v. Wainwright, C.A.Fla.1979, 608 F.2d 183, rehearing denied 611 F.2d 882, certiorari denied 101 S.Ct. 143, 449 U.S. 852, 66 L.Ed.2d 64.

Parties are required to inform trial judge of all promises that have been made in connection with plea agreement, not only those promises which they happen to consider important. U.S. v. Roberts, 1977, 570 F.2d 999, 187 U.S.App.D.C. 90.

Fair and expeditious disposition of criminal cases is best achieved by trial judge completely abstaining from any participation in any discussions or communications regarding sentence except as provided by this rule pertaining to pleas of guilty. U.S. v. Werker, C.A.N.Y. 1976, 535 F.2d 198, certiorari denied 97 S.Ct. 330, 429 U.S. 926, 50 L.Ed.2d 296.

Where petitioner's court-appointed attorney has his client's approval to discuss with prosecutor reduction of charge from murder to manslaughter, and after communicating to petitioner refusal of state to agree to such reduction, petitioner's counsel then told him that he would attempt to secure statutory minimum sentence in further negotiations and met with prosecutor and judge in judge's chambers to discuss plea, no basis existed for conclusion that judge improperly intruded from outset in, or actively initiated, plea negotiations. U.S. ex rel. Robinson v. Housewright, C.A.Ill.1975, 525 F.2d 988.

This rule providing that court shall not participate in any plea bargaining discussions implicitly recognizes that participation in plea bargaining process depreciates image of trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. U.S. v. Brighton Bldg. & Maintenance Co., D.C.Ill.1977, 431 F.Supp. 1115.

Judicial participation in plea bargain negotiations does not require, without more, the setting aside of the guilty plea as involuntary; rather, the cardinal issue is whether the plea was made voluntarily, given all the factors involved. Toler v. Wyrick, D.C.Mo.1977, 430 F.Supp. 545.

**246. —— Discretion of court**

District court, by implementing categorical rule refusing to accept any plea bargains that left standing only one count of a multiple-count indictment, exceeded power granted to it by this rule and failed to exercise discretion required of it to consider individually every plea. U.S. v. Miller, C.A.Cal.1983, 722 F.2d 562.

District court need not accept every guilty plea and is under no duty to consider a negotiated plea agreement. U.S. v. Moore, C.A.Mo. 1981, 637 F.2d 1194.

This rule does not in any way limit judge's discretion in deciding whether to accept plea agreement, and this discussion is governed by same broad principles as govern trial judge's discretion in sentencing. U.S. v. Adams, C.A. Tex.1981, 634 F.2d 830.

Under this rule, trial court retains discretion in accepting or rejecting plea bargain. U.S. v. Ocanas, C.A.Tex.1980, 628 F.2d 353, rehearing denied 633 F.2d 582, certiorari denied 101 S.Ct. 2316, 451 U.S. 984, 68 L.Ed.2d 840.

Generally, when there has been breach of plea bargain by government, district judge has discretion to determine appropriate remedy and may choose to conform sentence to provisions of plea bargain or allow withdrawal of plea. U.S. v. American Bag & Paper Corp., C.A.Pa.1979, 609 F.2d 1066.

Under this rule, judge retains discretion to accept or reject plea bargains. U.S. v. Bean, C.A.Tex.1977, 564 F.2d 700.

Court is not obligated to accept any recommendation or plea bargain reached by parties and should so inform accused when any bargain is disclosed. U.S. v. Dixon, C.A.Pa.1974, 504 F.2d 69, certiorari denied 95 S.Ct. 1353, 420 U.S. 963, 43 L.Ed.2d 440.

**247. —— Acceptance of agreement by court**

By accepting defendant's guilty plea, district court implicitly found that the plea was not induced by promises other than those contained in the written plea agreement. U.S. v. Corbett, C.A.Tex.1984, 742 F.2d 173.

Acceptance or rejection of plea agreement is prerogative of district court. U.S. v. Yates, C.A.Ky.1983, 698 F.2d 828, certiorari denied 103 S.Ct. 1532, 460 U.S. 1073, 75 L.Ed.2d 952.

District judge has discretion to accept or reject a plea that results from government's negotiation. U.S. v. Barker, C.A. Guam 1982, 681 F.2d 589.

Even if there had been plea agreement between defendant and government, defendant would not have been justified in relying on bargain until trial judge approved it. U.S. v. Aguilera, C.A.Fla.1981, 654 F.2d 352.

Where government agrees that specific sentence is the appropriate disposition of the case, trial court may accept or reject the whole, but it may not accept defendant's guilty plea and impose sentence greater than that agreed upon. U.S. v. Herrera, C.A.Ariz.1981, 640 F.2d 958.

Trial court was within its discretion in approving agreement that defendant would plead guilty to second-degree murder and that he

* COURT (JUDGE) is not Allowed by law to participate

Judge may not accept a guilty plea and impose sentence greater than that agreed upon

EXEMPT FROM LAW ON PRESCRIPTION

... In as much as Congress gave the Board Power to EXCUSE an UNTIMELY FILING and CONSIDER The MERITS of a PLAINTIFF'S CLAIM

it refused to hire him for civilian position, and then retaliating against him for filing discrimination complaint by its preparation of adverse military officer's efficiency report, successfully applied for administrative review of such adverse report, action of Army Board for Correction of Military Records would be subject to judicial review to determine whether its decision was arbitrary or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of substantive nature by which Guardsman had been seriously prejudiced. Thornton v. Coffey, C.A. Okl.1980, 618 F.2d 686.

145. Military status

Plaintiffs were not barred from litigating incidental, though necessary, question concerning their son's status on military records, notwithstanding alleged declaratory nature of case before Court of Claims [now Claims Court], where issue concerned whether Army Board for Correction of Military Records was required to make requested changes on military record of plaintiffs' son with respect to his duty in Vietnam and, if Board was so required, plaintiffs were automatically entitled to payments under sections 1475 to 1480 and 2771 of this title. Midgett v. U.S., 1979, 603 F.2d 835, 221 Ct.Cl. 171.

Characterization of a serviceman, disappeared and presumably deceased in a combat zone, as a deserter falls in a category of stigma cases that requires strict scrutiny by court in order to assure that military authorities do not abuse their discretion and make a decision that is supported by substantial evidence. Id.

Where lack of military status was one consequence of alleged wrongful action of government, Court of Claims [now Claims Court] declined to hold that absence of such status precluded judicial inquiry into merits of former serviceman's claim for active duty pay. Diamond v. U.S., 1965, 344 F.2d 703, 170 Ct.Cl. 166.

146. Personnel matters

Generally, the courts show extreme reluctance to interfere in matters of military personnel where the military has lawfully exercised its discretion. Reinhard v. Gorman, D.C.D.C.1979, 471 F.Supp. 112.

Judicial branch of government should hesitate to interfere with matters of legitimate military concern such as military personnel decisions and matter of personnel duty assignments within military is discretionary and beyond reviewing power of the court. Jamison v. Stetson, D.C.N.Y.1978, 471 F.Supp. 48.

147. Promotion

Where officer's records before Selection Board are prejudicially defective so that officer is not considered for promotion in fair and equitable manner and error is not harmless, Court of Claims [now Claims Court] can and will grant relief. Guy v. U.S., 1979, 608 F.2d 867, 221 Ct.Cl. 427.

Where a military Selection Board passed over an officer for promotion on the basis of certain officer efficiency reports, and where the Board for Correction of Military Records subsequently declared certain of the reports void and removed them from the officer's records but denied the officer's request to set aside his passover for promotion, in an action for an award of back pay the court will not review or set aside such discretionary denial of promotion where the decision of the Correction Board was not arbitrary, capricious or unlawful and was supported by substantial evidence. Dorl v. U.S., 1973, 200 Ct.Cl. 626, certiorari denied 94 S.Ct. 461, 414 U.S. 1032, 38 L.Ed.2d 323, rehearing denied 94 S.Ct. 1459, 415 U.S. 939, 39 L.Ed.2d 498.

148. Retirement

In absence of clear showing that Army Board for Correction of Military Records had acted arbitrarily or capriciously and therefore unlawfully, Court of Claims [now Claims Court] in which action was brought to recover retired pay allegedly due plaintiff as an Army officer who had suffered permanent physical disability in line of duty, would not disturb Board's findings. Wales v. U.S., Ct. Cl.1955, 130 F.Supp. 900.

While the Veterans' Administration's determination of the degree of disability is not conclusive upon the Court of Claims [now Claims Court] the results of the medical examination given by the Veterans' Administration only three months after the serviceman's discharge not by reason of physical disability are entitled to considerable weight in the court's review of the Correction Board's action in denying the man's request for correction of his records to show retirement for physical disability. Jordan's v. U.S., 1974, 205 Ct.Cl. 65.

The court must have clear and convincing evidence of arbitrary and capricious action before it will reverse the action of the Secretary or the Board for Correction of Army Records denying a request for correction of a serviceman's records to show retirement by reason of physical disability, and it is only where the decision of the Board is clearly unsupported by substantial evidence or when there was noncompliance with applicable laws and regulations that Court of Claims [now Claims Court] may interfere with the findings of the Correction Board. Id.

Where a decision of a Board for the Correction of Military or Naval Records is based on opinions and recommendations by military Boards which indulged in defective procedures in connection with the applicant's claim for disability retirement, and where the Board denied the applicant a hearing, the adverse decision of the Board is not entitled to finality or even the protection, on court review, of the substantial evidence rule. Harris v. U.S., 1966, 177 Ct.Cl. 538.

The decision of a Board for the Correction of Military or Naval Records, which is based on a finding that the officer was disabled as an incident of his naval service while serving in the rank of junior grade lieutenant and that he should have been retired for disability upon his release from active service in that rank, is final and binding on the officer unless he can show that it was arbitrary or contrary to law. Harris v. U.S., 1963, 150 Ct.Cl. 760.

149. Time of request for correction

If the Correction Board determines that serviceman's failure to request correction of records within three years after discovery of the error or injustice was inexcusable and that interest of justice does not dictate consideration of the request, then the Correction Board will deny relief on timeliness grounds, and court's review of the decision would be limited to a determination of whether the Board properly refused to hear the claim on that basis. Mulvaney v. Stetson, D.C.Ill.1979, 470 F.Supp. 725.

District court's power to review Correction Board's decision as to whether to permit servicemen to correct his records should be the same regardless of whether plaintiff filed his correction request within three years of discharge inasmuch as Congress has given Board power to excuse an untimely filing and consider the merits of a plaintiff's claim. Id.

V. PRACTICE AND PROCEDURE BEFORE COURT—GENERALLY

*Subdivision Index*

Accrual of cause of action, limitations 180
Admissibility of evidence 192
Affidavits 194
Appellate review 195
Burden of proof 191
Claims Court jurisdiction 172
Class actions 175
District court jurisdiction 171
Estoppel 177
Evidence
Admissibility 192
Weight and sufficiency 193
Half-loaf doctrine, limitations 181
Jurisdiction of
Claims Court 172
District court 171
Laches 178
Limitations
Generally 179
Accrual of cause of action 180
Half-loaf doctrine 181
Timeliness of particular actions 184
Tolling of period 182
Waiver 183
Motion for judgment 189
Parties 174
Pleadings 176
Presumptions 190
Releases 185
Remand to
Correction Board 197
Lower court 196
Res judicata 186
Service of process 173
Sufficiency of evidence 193
Timeliness of particular actions 184
Tolling of limitations period 182
Unclean hands 187
Waiver
Generally 188
Limitations 183
Weight and sufficiency of evidence 193

171. Jurisdiction of district court

In determining whether to exercise jurisdiction to review internal military affairs, district court must examine substance of the allegation in light of policy reasons behind nonreview and balance nature and strength of challenge to military determination, potential injury to plaintiff if review is refused, type and degree of anticipated interference with military function, and extent to which exercise of military expertise or discretion is involved. Hodges v. Callaway, C.A.Ga.1974, 499 F.2d 417, rehearing denied 503 F.2d 567.

District court's jurisdiction to review internal military affairs is restricted. Id.

Should Army Board for Correction of Military Records act in an arbitrary or capricious manner or deny party appealing from order in deportation case a certificate required by section 1440 of Title 8 relating to naturalization through active duty in the armed forces without substantial evidence to support such

2012

IMPORTANT DIRECT REFERENCES

a determination, district court would have jurisdiction to review the matter. Padua v. U.S., C.A.Cal.1972, 463 F.2d 245.

United States district court had jurisdiction to review determination of Army Correction Board concerning constitutionality of serviceman's court-martial conviction, notwithstanding claim that serviceman was limited in his remedy to habeas corpus, since a military discharge under other than honorable conditions imposes a lifelong disability of greater consequence for persons unlawfully convicted by court-martial, and serviceman's 26-year effort to lift disgrace of his dishonorable discharge from his record amply demonstrated such lifelong disability. Homcy v. Resor, 1971, 455 F.2d 1345, 147 U.S.App.D.C. 277.

Federal District Court in Massachusetts had jurisdiction of proceeding by former steward in Navy for change of his discharge from dishonorable to honorable after denial of such change by Board of Corrections of Naval Records, approval of that action by Secretary of Navy and dismissal of petition to review by United States Court of Military Appeals. Ashe v. McNamara, C.A.Mass. 1965, 355 F.2d 277.

Claim that undesirable discharge from armed forces was null and void could be entertained by federal district court in that it alleged judicially cognizable injuries for which relief, directing that honorable discharge be issued, may be granted. Stapp v. Resor, D.C. N.Y.1970, 314 F.Supp. 475.

District court had jurisdiction over suit to compel Secretary of Air Force to correct discharge and military record on ground that they were arbitrary and capricious. Smith v. U.S. Air Force, D.C.Pa.1968, 280 F.Supp. 478.

172. Jurisdiction of Claims Court

It is within jurisdiction of the Court of Claims [now Claims Court] to review and, in the appropriate case, reverse a decision of a service secretary which arbitrarily reverses a Correction Board's decision and findings. Weiss v. U.S., 1969, 408 F.2d 416, 187 Ct.Cl. 1.

Court of Claims [now Claims Court] has jurisdiction to review an adverse decision by a Board for the Correction of Military Records and to render a money judgment for pay deprived by reason of arbitrary or illegal action of a Correction Board, and rendering a money judgment and the necessary but incidental type of review involved therein, does not have effect of changing an official record or compelling executive action. Friedman v. U.S., 1968, 158 F.Supp. 364, 141 Ct.Cl. 239.

When the Secretary or the Board acts arbitrarily on an application for correction, the applicant acquires a claim arising under this chapter of which the Court of Claims [now Claims Court] has jurisdiction. Knight v. U.S., 1963, 152 Ct.Cl. 298.

173. Service of process

Where petitioner seeking in effect to mandamus Secretary of Defense to remove from military record dishonorable discharge did not deliver copy of summons and complaint to officer sued or to the United States as required, and where there was no waiver of lack of service by Secretary or United States, court never acquired jurisdiction and action must be dismissed. Smith v. McNamara, C.A. Kan.1968, 395 F.2d 896, certiorari denied 89 S.Ct. 1211, 394 U.S. 934, 22 L.Ed.2d 466, rehearing denied 89 S.Ct. 1477, 394 U.S. 995, 22 L.Ed.2d 773.

174. Parties

Although it would have been appropriate to have sued Secretary of Navy to compel change of discharge from dishonorable to honorable, it was sufficient that Secretary of Defense was named and served as the defendant. Ashe v. McNamara, C.A.Mass.1965, 355 F.2d 277.

Although veteran seeking review of Correction Board's decision to grant him only partial relief did not include the Board or its members as parties, where veteran had sued the Secretary of Air Force, and the Secretary, acting through the Board, had power to grant claimed relief of correction of records, inclusion of Secretary of Air Force was sufficient. Mulvaney v. Stetson, D.C.Ill.1979, 470 F.Supp. 725.

175. Class actions ✓ GROUP ACTIONS

Plaintiffs, who sought by mandamus to correct pertinent military records to reflect invalidity of their court-martial convictions, could properly represent a class of persons tried by courts-martial convened pursuant to authority of section of Judge Advocate General Manual which was struck down by Court of Military Appeals, but could not properly represent a class of persons tried pursuant to authority of other en bloc designations thereafter struck down by Court of Military Appeals. Brown v. U.S., D.C.Pa.1973, 365 F.Supp. 328, affirmed in part, reversed in part on other grounds 508 F.2d 618, certiorari denied 95 S.Ct. 2621, 422 U.S. 1027, 45 L.Ed. 2d 684.

176. Pleadings

Facts alleged in former Army nurse's petition for disability retirement pay as to Board for Correction of Military Record's denial of her application for rehearing did not show arbitrary action, and therefore petition failed to state a claim within jurisdiction of Court of Claims [now Claims Court]. Price v. U.S., 1957, 149 F.Supp. 181, 137 Ct.Cl. 685.

177. Estoppel

Government was entitled to invoke doctrine of equitable estoppel against plaintiff to preclude him from asserting procedural error by the Army in discharging plaintiff under "conditions other than honorable" where government took a position detrimental to itself when it relied upon statements of plaintiff as to his homosexuality and granted plaintiff a premature discharge from the Army after having trained plaintiff at government expense. Weir v. U.S., 1973, 474 F.2d 617, 200 Ct.Cl. 501, certiorari denied 94 S.Ct. 574, 414 U.S. 1066, 38 L.Ed.2d 471.

Where a member of the Army was content to be processed and discharged under an Army regulation pertaining to discharge of homosexuals as it was administered, and benefited by type of verification that was employed in that discharge was obtained, such Army member was subsequently estopped from challenging validity of such regulation. Id.

District court was without jurisdiction over servicewoman's suit challenging her discharge, since at time it was filed, servicewoman had not applied to Air Force Board for Correction of Military Records which had power to grant relief sought by servicewoman, and defendants were not shown to have misled plaintiff intentionally or through culpable negligence, and thus were not estopped from asserting defense of nonexhaustion of administrative remedies. Callaway v. Stetson, D.C.Fla.1978, 448 F.Supp. 575.

178. Laches

Passage of 11 years from date of allegedly erroneous officer effectiveness report and date of judicial review weighed heavily against plaintiff's efforts to overcome report by a showing that it was a misstatement of a significant hard fact, gross material error of fact or an action contrary to all evidence, or so unsupported by evidence as to be a gross injustice. Grieg v. U.S., Ct.Cl.1981, 640 F.2d 1261, certiorari denied 102 S.Ct. 1251, 455 U.S. 907, 71 L.Ed. 444.

While the Court of Claims [now Claims Court] is reluctant to impose the bar of laches in such a way as to discourage reasonably prompt, good faith pursuant of permissive administrative remedies for relief, where almost 5 years elapsed between the adverse decision by the military Correction Board and plaintiff's suit filed in the Court of Claims just 2 days short of the 6 year statute of limitations, the unverified assertion of indigency and lack of credit as excuses for the procrastination is not a plausible defense to the bar of laches in a suit for back pay. Steuer v. U.S., 1975, 207 Ct.Cl. 282.

179. Limitations—Generally

Where military records are corrected under this section to show a portion of taxable retired pay as tax exempt disability retired pay, the claimant may be paid the amounts of pay withheld for income taxes by the Air Force in years for which the Internal Revenue Service is barred from making tax refunds by the applicable statute of limitations, however, while this section provides for certain types of payments pursuant to correction of military records, it does not authorize payment for tax refunds in derogation of Title 26 statute of limitations beyond monies withheld for taxes by the military department concerned. 1979, 58 Comp.Gen. 528.

180. —— Accrual of cause of action

Where retired naval officer applied to Navy Board for Correction of Navy Records to show that officer had in fact continued on active duty through time that accumulated leave, applied for but not granted, would have expired, officer's cause of action to have record corrected arose on refusal of Board, after Secretary's disapproval, to correct record and suit was brought almost immediately upon officer's notification of refusal to correct record, although suit had effect of seeking recovery for salary for periods more than six years prior to its institution, it was in time. Eicks v. U.S., 1959, 172 F.Supp. 445, 145 Ct.Cl. 522.

Where the Correction Board corrects a military record insofar as it contains an erroneous legal conclusion, and payment of amounts due as a result thereof is ordered by the Board and actually made to the serviceman, the later improper recoupment of such payment creates a new cause of action which may be sued on in the Court of Claims [now Claims Court] if the petition is filed within six years of the date of such improper recoupment, but if there has been only a correction of the legal conclusion in the record and no payment and recoupment, then the cause of action accrued when payments were not properly made under the uncorrected record and the later correction without payment did

could be founded on this section which contained no requirement for an amount in controversy, in situation where claim that Connecticut's welfare regulations were inconsistent with the federal statute was connected to a constitutional claim which, as set forth in the pleadings, was plainly unsubstantial. McCall v. Shapiro, D.C.Conn.1968, 292 F.Supp. 268, affirmed 416 F.2d 246.

The jurisdictional amount is of no importance in cases arising under the Civil Rights Act, § 1981 et seq. of Title 42. Sawley v. City of Norfolk, Va., D.C.Va. 1958, 159 F.Supp. 642, affirmed 260 F.2d 647, certiorari denied 79 S.Ct. 650, 359 U.S. 935, 3 L.Ed.2d 636.

This section conferring jurisdiction on federal courts regardless of amount in controversy in suits for redress of deprivation of civil rights confers jurisdiction only where plaintiffs have been deprived of civil rights under color of any statute, ordinance, regulation, custom or usage in a state or territory. Johnson v. Levitt & Sons, Inc., D.C.Pa.1955, 131 F.Supp. 114.

In suit by officers and members of certain political party to restrain enforcement and execution of Code 1942, §§ 3107-01 to 3107-09 requiring name of political party to be registered with Secretary of State for State of Mississippi and providing that no political party shall use or register any name already registered, on ground that Code 1942, §§ 3107-01 to 3107-09 as construed, violated due process clause of U.S.C.A.Const. Amend. 14 wherein it was alleged that there was a deprivation under Code 1942, §§ 3107-01 to 3107-09 of a right, privilege or immunity secured by U.S.C.A.Const. Amend. 14, federal jurisdiction existed irrespective of amount involved. Howard v. Ladner, D.C.Miss. 1953, 116 F.Supp. 783.

Under the statute conferring jurisdiction on district court to redress the deprivation under color of State law, custom or usage, or any right or privilege secured by the United States Constitution or Act of Congress providing for equal rights of citizens, plaintiff is not required to show any amount in controversy, the statute being enacted to more effectively secure the civil rights granted by the 13th, 14th and 15th Amendments to the federal Constitution. McGuire v. Amrein, D.C.Md.1951, 101 F.Supp. 414.

**106. Diversity of citizenship**

Under par. (3) of this section, right to maintain suit in federal district court to enjoin enforcement of city ordinances requiring a permit for transportation of persons for hire was conferred on individual plaintiffs by due process clause of U.S.C.A.Const. Amend. 14 and Acts of Congress, regardless of their citizenship. Walton v. City of Atlanta, C.A.Ga.1950, 181 F.2d 693, certiorari denied 71 S.Ct. 56, 340 U.S. 823, 95 L.Ed. 604.

Neither diversity of citizenship nor amount in controversy is prerequisite to federal court jurisdiction of cause of action asserted under Civil Rights Act. Boltone v. Lindsley, C.A.10 (Colo.) 1948, 170 F.2d 705, certiorari denied 69 S.Ct. 810, 336 U.S. 944, 93 L.Ed. 1101.

District court had jurisdiction over action, which joined various state law claims and claim for deprivation of civil rights, where there was complete diversity as to the state law claims but not as to the civil rights controversy, since the latter did not require diversity to invoke federal jurisdiction. Baker v. J. C. Penney Co., Inc., D.C.Ga.1980, 496 F.Supp. 922.

Diversity of citizenship is not a prerequisite for causes of action arising under par. (3) of this section forbidding general deprivation of constitutional rights and amount in controversy is also immaterial when right involved is one of personal liberty. Bryant v. Harrelson, D.C.Tex. 1960, 187 F.Supp. 738.

The right to maintain suit under § 1983 of Title 42 in federal district court, regardless of diversity of parties' citizenship or amount in controversy, is conferred by due process clause of U.S.C.A. Amend. 14, this section and § 1983 of Title 42. Oppenheimer v. Stillwell, D.C.Cal.1955, 132 F.Supp. 761.

**107. Purpose of filing action**

Where prime purpose of suit was not to redress asserted constitutional deprivations but, on these and other grounds, to put waterworks district out of business, subject matter was not cognizable under Civil Rights Act, § 1981 et seq. of Title 42, and district court jurisdiction thereunder was lacking. Pierre v. Jordan, C.A. 9 (Cal.) 1964, 333 F.2d 951, certiorari denied 85 S.Ct. 664, 379 U.S. 974, 13 L.Ed.2d 565, rehearing denied 85 S.Ct. 884, 380 U.S. 927, 13 L.Ed.2d 814.

Very Impt.

**108. State law violations generally**

Federal courts have jurisdiction over claims that state judicial proceedings have resulted in deprivation of federal constitutional rights as long as claims are otherwise properly before federal courts. Petersen v. Sheran, C.A.8 (Minn.) 1980, 635 F.2d 1335.

Action to enjoin enforcement of state court judgment in suit which involved only matters dealing with state law and procedure did not involve federal jurisdiction and was properly dismissed. Levine v. Lacy, C.A. 4 (Va.) 1965, 344 F.2d 695.

Federal courts lack jurisdiction to entertain suits alleging denial of rights and privileges derived solely from state laws. Wright v. Mahan, D.C.Va.1979, 478 F.Supp. 468, affirmed 620 F.2d 296.

Standing alone, an attack upon a state statute on sole ground that it violates state law is clearly not contemplated by congressional grant of either "federal question" jurisdiction or "civil rights" jurisdiction. National Market Reports, Inc. v. Brown, D.C.W.Va.1978, 443 F.Supp. 1301.

**109. Equal rights**

The term "equal rights" in this section should be construed not so much as a term limiting the scope of this section, but rather as a term intended to spread the jurisdictional umbrella of the federal courts over any action authorized under statutes enacted to give effect to U.S.C.A.Const. Amend. 14, including specifically § 1983 of Title 42. Blue v. Craig, C.A. 4 (N.C.) 1974, 505 F.2d 830.

Provision of this section giving district courts original jurisdiction of civil actions brought to redress deprivation, under color of state law, of rights secured by Constitution or by any act of Congress providing for "equal rights" does not have effect of limiting substantive rights to statutes providing for equal rights. La Raza Unida of Southern Alameda County v. Volpe, D.C.Cal.1977, 440 F.Supp. 904.

"Equal rights" limitation in this section refers to Act of Congress and not to rights secured by federal Constitution. Richardson v. Civil Service Commission of State of N.Y., D.C.N.Y.1973, 387 F.Supp. 1267.

Before jurisdiction over statutory claim exists under this section conferring original jurisdiction on federal courts of any action to redress the deprivation under color of state law of any right secured by any Act of Congress providing for equal rights of citizens, it must be established that the statute on which claim is based is one providing for equal rights. Young v. Harder, D.C.Kan.1973, 361 F.Supp. 64.

Under this section giving district courts original jurisdiction to redress deprivation of any right, privilege or immunity secured by the United States Constitution or any Act of Congress providing for "equal rights" of citizens, the quoted phrase refers to U.S.C.A.Const. Amend. 14, prohibiting a state from denying to citizens and persons within its jurisdiction, the equal protection of the laws. McGuire v. Amrein, D.C.Md.1951, 101 F.Supp. 414.

**110. Personal or property rights distinction abolished**

For purposes of this section giving federal courts jurisdiction of civil action to redress deprivation, under color of law, of equal rights, there is no distinction between personal liberties and proprietary rights. Lynch v. Household Finance Corp., Conn.1972, 92 S.Ct. 1113, 405 U.S. 538, 31 L.Ed.2d 424, rehearing denied 92 S.Ct. 1611, 406 U.S. 911, 31 L.Ed.2d 822, on remand 360 F.Supp. 720. See, also, Mayhugh v. Bill Allen Chevrolet, D.C.Mo.1973, 371 F.Supp. 1, affirmed 496 F.2d 16, certiorari denied 95 S.Ct. 328, 419 U.S. 1006, 42 L.Ed.2d 283.

This section giving district court jurisdiction over actions to redress deprivation of rights can be used as jurisdictional basis in section 1983 of Title 42 for deprivation of rights when property rights are involved. Clayton v. Shaw, C.A. 5 (Tex.) 1977, 548 F.2d 1155, certiorari denied 98 S.Ct. 220, 434 U.S. 873, 54 L.Ed.2d 153.

Under this section, federal jurisdiction may exist even if only property rights are involved. Tramel v. Schrader, C.A. 5 (Tex.) 1975, 505 F.2d 1310.

Property rights are basic civil rights and are protected not only by the Constitution but also by the Civil Rights Act. Comtronics, Inc. v. Puerto Rico Tel. Co., D.C.Puerto Rico 1975, 409 F.Supp. 800, affirmed 553 F.2d 701.

There is no distinction between personal liberties and property rights under jurisdictional civil rights statute. Mayhugh

REPUBLIC OF THE PHILIPPINES
Senate
**Office of Sen. Manuel "Lito" M. Lapid**
Rm. 516, Senate of the Philippines
GSIS Bldg., Financial Center
Roxas Blvd., Pasay City

**OFFICIAL MAIL**
PENALTY
FOR PRIVATE OR
UNAUTHORIZED USE
TO AVOID PAYMENT
OF POSTAGE,
500.00 FINE
OR IMPRISONMENT.





REPUBLIC OF THE PHILIPPINES

Senate

Pasay City

*Hon. Manuel "Lito" M. Lapid*

SENATOR

January 30, 2008

**MR. ARNOLD RUSSO**
Director
Appeals Management Center
U.S. Department of Veterans Affairs
1722 Eye Street NW
Washington DC 20421

Dear Mr. Russo:

I write in behalf of **Mr. Perfecto C. Velasco,** a constituent from Cavite City, Philippines who sought my assistance regarding the status of his appeal for Veterans Affairs (VA) benefits which is being heard by your office.

According to Mr. Velasco, he has complied with all the requirements per your instruction to him in a letter dated February 8, 2007 and it will greatly help him if he would be informed of the status of his pending appeal.

Your favorable action on this matter pursuant to your laws on veterans' affairs shall be greatly appreciated.

Thank you and warmest regards.

Very truly yours,

MANUEL "LITO" M. LAPID

Rm. 516, 5th Floor, Senate of the Philippines, GSIS Building, Financial Center, Roxas Boulevard, Pasay City
Office Phone Nos. 552-6601 to 80 (Trunk Line) local 5573, 5575 Fax No. 552-6695



**OFFICE OF LEGAL AID**
Room 107 G/F Malcolm Hall
College of Law
University of Philippines
Diliman, Quezon City
Philippines 1101

PERFECTO VELASCO
954-A BAYAN LUMA 9
IMUS, CAVITE

572

REGISTERED
U.P. POST OFFICE
QUEZON CITY, METRO MANILA
PHILIPPINES
DEC 11 2006

(17)

Postmaster: If undelivered in ... please return to sender.

- ☐ Ordinary
- ☐ Airmail
- ☐ Registered Mail
- ☐ Personal Delivery
- ☐ Special Delivery
- ☐ With Return Card



University of the Philippines
College of Law
**OFFICE OF LEGAL AID**
(Established 1974)
Room 107, Malcolm Hall, Diliman, Quezon City, Philippines 1101
Tel. Nos. 927-62-60/ 920-55-14 loc 106 • TeleFax No. 920-55-14 loc 106

University of the Philippines
College of Law

**Professor Salvador T. Carlota**
*Dean*

**Prof. Patricia R. Salvador Daway**
*Associate Dean*

University of the Philippines
OFFICE OF LEGAL AID

**Professor Theodore O. Te**
*Director*

*Supervising Lawyers*

**Atty. Jose Armand C. Arevalo**
**Atty. Maria Sheila M. Bazar**
**Atty. Andre Gerard G. Ballesteros**
**Atty. Josefina M. Buenaseda**
**Atty. Rhoderick D. M. De La Paz**
**Atty. Lourielee L. Garcia**
**Atty. Solomon F. Lumba**
**Atty. Fred B. Pamaos**
**Atty. Ricardo A. Sunga III**
**Atty. Marlou B. Ubano**

05 December 2006

Mr. Perfecto Velasco
#954-A Bayan Luma 9
Imus, Cavite

Dear Mr. Velasco:

This concerns your letter dated 16 November 2006 asking for an appointment with me in relation to the matters contained in your letter.

We regret to inform you that we cannot provide the legal assistance you require because your complaint for damages has been filed in a foreign jurisdiction.

Thank you very much.

Theodore O. Te
*Director*

cc: Senator Loi Estrada

Atty. THEODORE TE 16 NOV. 2006

DIRECTOR,

U.P. OFFICE of the LEGAL AID

DEAR ATTY. TE,

I would like to respectfully request for an appointment with you regarding my case against the United States of AMERICA (Spec. U.S. NAVY) which is being heard right now on the sala of FEDERAL DISTRICT JUDGE COLLEEN-KOLLAR KOTELL at the U.S. FEDERAL DISTRICT COURT, DISTRICT of COLUMBIA, WASHINGTON, D.C.

This is a CIVIL CASE that I filed this year and the Court granted me "LEAVE to PROCEED in FORMA PAUPERIS" and "LEAVE to file w/out payment of COSTS GRANTED". The DAMAGE SUIT has something to do with the OVER-INCARCERATION on my Sentence by the Military COURT-MARTIAL, that led to the VIOLATION of my Human Rights

Your office was referred to me by the Office of SENATOR LOI EJERCITO through Atty. CARINA DEMAISIP.

Please consider my request and whatever legal assistance you could extend regarding my case against the United States Navy.

Respectfully Yours,

Perfecto C. Velasco

PERFECTO C. VELASCO